SAVOY, Judge.
Plaintiff instituted this action in boundary alleging he is the owner of- certain property in St. Landry Parish lying west of certain property owned by defendants. Plaintiff alleged the boundary line between the contiguous estates had never been established judicially or by agreement between the parties, and prayed that the court appoint a surveyor to make a survey fixing the boundary between the properties. He further alleged that defendants should be condemned to pay all costs of the suit, including the fee of the surveyor. Defendants filed an answer wherein they alleged ownership of a portion of plaintiff’s property because of a visible boundary alleged to have been in existence for over fifty years. Defendants plead acquisitive prescription of thirty years and averred numerous acts of possession relating to the property in dispute.
The surveyor appointed by the court found that the defendant was claiming approximately 630 feet of property west of *916 the ideal property line between the estates as shown by the plat of survey filed in evidence. A copy of the pertinent portion of said plat is attached for clarity.

After trial on the merits the district court overruled the plea of prescription, adopted the survey made by the appointed surveyor, and granted judgment in plaintiff’s favor as prayed for. From this judgment the defendants have filed an appeal to this Court.
Defendants maintain that the district court erred in finding that the boundary between the properties had never been established; in finding that the hack line existing for over fifty years between the estates was not mutually agreed upon; in finding that defendants and their ancestors in title had not been in continuous and uninterrupted possession of the disputed area for over fifty years; and in casting the defendants for all of the costs, including the fee of the surveyor appointed by the court. Plaintiff maintains that defendants did not prove any possession of the disputed land whatever and certainly not continuous possession for a period of thirty years or more; that the district court correctly established the boundary between the properties as the ideal boundary divid *917 ing the east half from the west half of Section 8, Township 6 South, Range 6 East, in accordance with the plat of survey by the court-appointed surveyor; and that all costs in both courts should be assessed against defendants. _
The record shows that plaintiff purchased the property in question by deed filed February 19, 1965, as part of a larger tract from the heirs of James H. Wilson and wife from Benjamin F. Stevens. Stevens acquired an undivided one-half interest in the property from James H. Wilson in 1935. James H. Wilson had purchased lots 3 and 4 of fractional section 8-6-6, on August 10, 1911. Defendants are the heirs of Lucien Voorhies who, in 1911, purchased lots 1 and 2 of fractional section 8-6-6. The four lots comprise all of said Section 8, and lots 4 and 3 lie west of lots 2 and 1. The deed to plaintiff contained also property to the north-in Section 5-6-6, and the property was described by adjoining property owners, and set forth that the property was bounded on the east by property of “Voorhies”. The ideal boundary between the said lots 2 and 3 is a north-south line at the midpoint of Section 8-6-6. Because of the irregular nature of the section, there are approximately 101 acres lying east of that line within lots 1 and 2, and there is approximately 86.2 acres lying west of that line within lots 3 and 4.
The property involved is located on the north side of Bayou Courtableau, and except for the high ground along the bayou bank, is swamp timber land usable only for logging. A gravel public road follows along the north side of Bayou Courtableau. The plat of survey by the court-appointed surveyor, Lindsey J. Aucoin, indicates an existing fence line from the gravel road, at a point designated “CIX”, northerly, at a bearing N1 degree, 27 minutes, 38 seconds west to a point designated “JLGX”, which is apparently at the banks of a small bayou running generally easterly and westerly known as Bayou de Pouche. This north-south fence line is located approximately 630 feet west of the ideal property line established by the court-appointed surveyor at the north-south line at the mid-point of Section 8-6-6, and the area in dispute is between those two lines. This fence was erected by plaintiff in the year 1965, and was placed along a line which had been maintained for years by hack marks and blazes on trees which defendants maintain is the recognized and established boundary between thé properties. Defendants called several witnesses to testify as to the boundary line and acts of possession by their ancestor in title.
Mrs. Roland Way, who is 60 years of age, testified she is the granddaughter of J. H. Wilson; that she lived on the property from the time she was nine years old until ten years after she married, and has since lived in the immediate vicinity. She stated that when she was a child, her grandfather showed her the eastern boundary of his property at the hack marks on the trees that constituted the line; that he kept the lines hacked; and that Voor-hies owned the property on the other side. She testified there were no camps on the Wilson property when it was sold to plaintiff in 1965, but there was a camp on the Voorhies property adjoining the hacked line separating the two estates. She stated her grandfather always claimed this hacked line as his eastern boundary line, and this line was shown to Bihm when he purchased the property. She was present when her husband showed Bihm the boundary line. She testified that prior to the 1927 flood there was a sawmill located just east of the hacked line, and Mr. Voorhies obtained permission from her grandfather to put sawdust from the sawmill on his, Mr. Wilson’s, property. In the general vicinity of the sawmill, there was a rooming house, a commissary, and a broom factory. These and other dwellings were located on the property of Voorhies near the hacked line. J. H. Wilson followed the lines or kept them up as late as 1935, and was an invalid the last few years of his life .and died in 1942. The hack line was removed when plaintiff *918 dug a ditch and put a fence along the line. She testified the hacked line was clearly visible and obvious to anyone going through the woods.
Mr. Roland Way testified that his wife, then Miss Hall, was living on the Wilson property in 1927, and that he had walked the hacked line a few times. The line ran almost due north from the place where a sawmill had been to a slough called “Coule de Pouche”. Mr. Wilson claimed the line as his eastern boundary line. On the occasion of the sale of a one-half interest in the Wilson property, he was shown and walked the same line as the line of demarcation between the Wilson and Voor-hies properties. From 1935 to 1965, he was in charge of overseeing the Wilson property, in leasing the land to oil companies, and in preventing timber from being stolen. He also pointed out to plaintiff this line as the eastern boundary when plaintiff purchased the property. On cross-examination, Mr. Way testified he was approached about 1941 or shortly thereafter by a man named Mouret who wanted to rent a campsite, but the Wilson heirs were only interested in selling, so he suggested that Mouret see Voorhies, and a camp was then placed just east of the hacked line on the Voorhies property. Mr. Way stated that a man named Son Moreau kept the line marked and was “carrying on the line” after Mr. Wilson died. He testified that between 1935 and 1965, when he was in charge of the Wilson property, no one in charge of the Voorhies property ever questioned the hacked line as the boundary line between the estates.
John McDaniel testified he was a timber buyer from 1935 to 1967 for May Brothers, Inc.; he was familiar with the property owned by Wilson and Voorhies and the hacked line between those properties. He was shown this line by Son Moreau, an employee of Voorhies, when he bought all the timber owned by Voorhies in the area in about 1946. Although he did not buy timber from the Wilson tract, it was his job to know the exact boundaries. He testified the hacked line continued in existence from the time he first saw it in about 1946 until it was recently replaced by a ditch and levee. This was the only hacked line he knew of in the area. He described the hacked line which ran from Bayou Courtableau northward to the small bayou called Pouche. This line was hacked and blazed every 25 or 30 yards and was clearly visible. There were three hacks on each side of a tree, accompanied by a blaze on each of the other two sides. As the line ran northward, the blazes were on the north and south side of the trees.
Charles Godet testified he was familiar with the property since 1918, having lived in the immediate area. He recalled a broom factory located near property now owned by plaintiff. About a year before the trial he and one other person located a brick foundation or remnants of bricks he had seen some twenty years earlier as he had hunted in the area. He believed this was the location of the broom factory he had recalled in youth and testified those brick remnants were located about 200 to 300 feet east of plaintiff’s drainage canal.
Sidney Rourks testified he had lived in the Port Barre area for 60 years and was familiar with the line between the Voorhies and Wilson properties. Mr. Wilson had told him where the line was. He recalled when the sawmill was built, as he was around there as a small child at the time. He recalled a lumber yard and living quarters, a handle factory, and a commissary, which were all located pretty close together on the Voorhies property. The boundary line claimed by Mr. Wilson came by right at the end of the sawdust pile of the sawmill. These buildings were moved before or washed away by the high water of 1927. He thought there were no camps built in the area until about 1946.
Plaintiff acknowledged on cross-examination that Roland Way pointed out the eastern boundary of the property he was buying, indicating that the line ran northward from some painted trees alongside *919 the first camp on the Voorhies property, and this is what he thought he was buying from the Wilson heirs. He testified he dug a canal and levee and built a fence along the hack line shown him by Roland Way as the eastern boundary line.
The law applicable to this case is found in the landmark case of Opdenwyer v. Brown, 155 La. 617, 99 So. 482 (1924), and is to the effect that where there is a visible boundary which has been in existence for thirty years or more, and the defendant in the boundary action and his predecessors in title have, in addition to the land described in their title, actually possessed the land extending to that visible boundary, a plea of prescription of thirty years will be sustained. For the above rule to be applicable there must be (1) a visible boundary; and (2) there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more, of the land extending beyond that described in their title and embraced within the visible bounds.
In Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952), the following can be found:
“What the court means by ‘enclosures’, as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means ‘enclosed only by a fence or wall’ would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases.”
* * * * * *
“Furthermore, under the established jurisprudence of this court the corporeal possession necessary to support prescription is governed by the use to which the land is destined. What is essential for actual possession changes with the nature of the property, and may be different when it relates to one kind from what it is when it relates to another. * * *. (Citations omitted.)
“What constitutes possession in any case is a question of fact, and each case depends upon its own facts. * *
Also, in A.B.A. Exploration Gas & Oil Co. v. A. Wilbert’s Sons Lumber and Shingle Company, 170 So.2d 752 (La.App. 1 Cir.1964), the following language can be found:
“ * * * Moreover, it is settled law that the requirement of acceptably marked boundaries is directly related to the nature of the land involved, the interpretation thereof being not so strict with respect to swamp lands as it is with regard to property in agricultural areas. * * * (Citations omitted.)
“In summary we find defendant herein exercised uninterrupted and public possession of subject property in every manner in which it was: susceptible of being possessed. We further find the boundaries (excepting the nature boundary mentioned) were duly and properly marked in the only manner whereby swamp lands subject to frequent overflow can be feasibly identified.”
The record in this case shows that the hacked line had been established by the time Wilson and Voorhies acquired their properties and was recognized as a line of demarcation between the estates for a period of well over thirty years. Even the plaintiff admits he was shown this line as the eastern boundary line when he purchased the property in 1965. This hack line had been maintained since 1911 or before and remained in existence until plain *920 tiff dug a canal and levee and placed a fence on the line. Except for the higher land near Bayou Courtableau, this land is marsh timber land where a hacked line was the customary method of showing a boundary. This line was maintained until about 1935 by plaintiff’s ancestor in title, J. H. Wilson, and was later continued by an employee of defendant’s ancestor in title, Lucien Voorhies. The evidence shows it was clearly visible to anyone going through the area.
The record also shows that the hack line was recognized by both Wilson and Voorhies as the boundary line between the estates. The evidence clearly shows that both Wilson and his heirs recognized the boundary line. Also, Voorhies obviously accepted the line as he constructed immediately to the east thereof a sawmill, broom factory, commissary, and crew quarters. Voorhies also requested of Wilson permission to dump sawdust from the mill on Wilson’s side of the line. Also, the incident as to the leasing of the land for a camp by Voorhies to Mouret just east of the hack line with the acquiescence of the Wilson heirs shows that this line was the accepted boundary line. Other camps were also built on the property involved to the east of the line after 1946. It was not until some time after plaintiff’s purchase of the property that any question arose as to the boundary line. This evidence shows there was a tacit and actual acceptance by the ancestors of the parties to 'this lawsuit of the hack line as the common boundary.
The acts of possession prior to 1927 in the construction and maintenance of the sawmill, broom handle plant, and other buildings; the subsequent selling of timber rights and leasing of campsites, were all done openly, corporeally and notoriously as owner, by Voorhies. Voorhies’ employee, Son Moreau, also assisted in maintaining the hack line.
Although all structures on the land in question were removed or destroyed as of the time of the flood in 1927, there were adequate external and public signs announcing Voorhies’ intention to preserve the possession of the property between 1927 and about 1946 when the camps were built. The hacked lines were maintained during this period of time as mute evidence of the intention of both parties to possess the property on their respective sides of the lines. There was also the minor vestige remaining of the brick remnants of the sawmill or broom handle factory. During this time, there was no adverse claim to Voorhies’ possession of the land in question. Then, beginning about 1946, one, and then more, camps were built on this land recognizing the possession by Voorhies. Considering especially the nature of the land, this Court finds that defendants’ ancestor in title maintained uninterrupted possession to the hack line as boundary for a period well in excess of thirty years. This Court finds that from the time of the purchase of the property by Voorhies that he and/or his heirs began possession of the disputed land corporeally, possessed as owner publicly, never abandoned possession or intention to possess and were never disturbed or interrupted in possession by adverse possession of another or by an adverse claim until this lawsuit arose. Under the facts and circumstances of this case, the thirty years prescription provided in LSA-C.C. Article 852 is applicable, and the plea of prescription made by defendants will be sustained.
We are also of the opinion that the trial judge was in error in assessing defendants with the costs of the survey. LSA-Civil Code Articles 832 et seq., prescribe the procedure to be used in making surveys. We note particularly that the surveyor failed to comply with LSA-C.C. Art. 833, which reads as follows:
“Whether the limits be fixed judicially or extra judicially, it must be done by a sworn surveyor of this State, who shall be bound to make a proces verbal of his work in the presence of two witnesses, called for the purpose, who shall *921 sign the proces verbal with him, or mention shall be made therein of the causes which prevented them from sighing.” (Emphasis theirs.)
Accordingly, we tax the costs of survey one-half to plaintiff and one-half to defendants.
For the reasons assigned the judgment of the district court is reversed, and judgment is rendered in favor of defendants, A. Lambert Voorhies, Mireille Voorhies Crawford, and Marie Elise Voorhies; and against plaintiff, Burice C. Bihm, fixing the boundary between the property of the parties, to-wit:
Beginning at the point identified as “CIX” on the attached plat, continuing from that point North l°-27/-38" thence West to the North line of fractional Section 8, Township 6 South, Range 6 East, in St. Landry Parish, Louisiana; and from the same point of beginning continuing South l°-27'-38" East to the center line of Bayou Court-ableau.
Costs of the survey are to be paid one-half by plaintiff and one-half by the defendants. Plaintiff to pay all other costs in this Court and in the district court.
Reversed and rendered.