177 So.2d 288 (1965)
Armand O. PORCHE
v.
Theophile W. MARTIN.
No. 6430.
Court of Appeal of Louisiana, First Circuit.
July 1, 1965.
*289 Bernard L. Knobloch, Thibodaux, for appellant.
Deramee & Deramee, Thibodaux, Lottinger & Lottinger, Houma, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
This is a boundary action brought by plaintiff, Armand O. Porche, to establish the line of demarcation between certain lands owned by said plaintiff and adjoining properties belonging to defendant, Theophile Martin, situated in Section 24, Township 16 South, Range 17 East, Lafourche Parish. Plaintiff's petition alleged the bounds of these contiguous estates have never been established and prayed for the appointment of a surveyor to determine the confines of the respective owners. The learned trial court homologated the proces verbal of the surveyor appointed to make the survey and established the boundaries in accordance with the map of survey thereto attached. Defendant has appealed the judgment homologating the proces verbal, dismissing said appellant's plea of prescription, ordering defendant to remove fences encroaching upon plaintiff's property as determined by the survey and casting defendant for all costs, including the expenses of the survey.
Subject properties front on the north side of Bayou Blue which stream runs generally in a northwest-southeasterly direction. However, because of a bend encountered in its meandering, the bayou runs from west to east at the point where it forms the southern boundary of the estates in question. The section and property sidelines are all parallel in this area and run approximately in a Northeasterly direction (North 38 degrees East, to be precise). Due to its sinuosity, the water course crosses subject estates at a rather sharp angle; as a consequence the side property lines of these adjoining estates are not perpendicular to their front lines.
Plaintiff's property was acquired by deed describing same as follows:
A certain tract of land situated in the Parish of Lafourche, on the left bank of Bayou Blue, measuring ONE arpent front on Bayou Blue by a depth of Ten arpents; bounded in front by said Bayou Blue, above by lands of Thaddeus and Katherine Toups, and below and in the rear by lands of Albert Porche and others, formerly, now Theophile Martin; together with all the improvements thereon and all the rights and privileges thereto belonging or in anywise appertaining.
Appellant's abutting property, which lies partly in Section 24 and partly in Section 25, is described thusly:
A certain tract of land, situated in the Parish of Lafourche, Louisiana, lying on the left descending bank of the Bayou Blue, at about 11½ miles below Thibodaux, bounded in front by the said Bayou Blue, above by the land of Frank Porche, or assigns, below by the land formerly of Octave Breaux and for a distance of 30 arpents by the land of Mrs. Eugene Cadiere, formerly and in the rear by the land of E. P. Lefort, the lower arpent front having a depth of ten arpents and the next three arpents front having a depth of forty arpents and the next one arpent front having a depth of thirty arpents, commencing at a distance of ten arpents from said Bayou; the whole having the equivalent of a tract of land measuring a front of four arpents with a depth of forty-arpents.
Together with all the buildings and improvements thereon and all rights, *290 ways, privileges and servitudes thereunto belonging, or in any wise appertaining.
From the foregoing description it will be noted that the upper or westernmost arpent of defendant's estate commences at the rear or northern boundary of plaintiff's property and by said width extends northerly therefrom a distance of thirty arpents. In addition appellant owns three arpents front on Bayou Blue by a depth of forty arpents which tract adjoins the East boundary of plaintiff's lands for the first ten arpents extending northerly from the Bayou. Defendant's property also includes an additional arpent front by a depth of ten arpents abutting his three arpent by forty arpent tract on the east.
Extended northerly, plaintiff's west or upper boundary forms the western boundary of defendant's property. Both estates are bounded on the West by property of Thaddeus and Katherine Toups whose lands front on the Bayou and extend northerly to the forty arpent line. The boundaries sought to be established in this litigation are the rear or northern line and the lower or eastern line of plaintiff's lands, both of which are common boundaries between these adjoining landowners.
Appellant's exception of prescription, based on alleged thirty year possession to a visible boundary, was tried separately during the course of which a number of witnesses were called to testify regarding possession exercised by the contestants and the existence of certain alleged boundary markers. In so proceeding the learned district court was eminently correct. See LSA-C.C. Article 852; Sessum v. Hemperley, 233 La. 444, 96 So.2d 832.
The record reveals subject estates were formerly owned by a single proprietor, Julien Theodore Porche, who, on May 6, 1942, sold the property now owned by plaintiff to one Thomas J. Porche, who, in turn, transferred it to appellee on April 10, 1957. On August 19, 1943, appellant acquired his property from said Julien Theodore Porche who was therefore the common ancestor in title of both litigants. From the foregoing, it readily appears subject properties were held in common ownership within thirty years of institution of this boundary action.
It is settled jurisprudence that to establish a boundary pursuant to a plea of prescription based on the provisions of LSA-C.C. Article 852, there must be thirty years adverse possession to a visible boundary. Sessum v. Hemperley, 233 La. 444, 96 So.2d 832.
Where two tracts of land have a common owner, there can be no adverse possession because an owner cannot prescribe against himself. Jones v. Dyer, La. App., 71 So.2d 648; LSA-C.C. Article 3514.
From the record it is indisputable that the common owner, Julien Theodore Porche, treated subject properties as one estate and, through himself and certain tenants, farmed the properties as a single unit with no markers, boundaries or other distinguishable or visible monuments or topographical features delineating the tracts now owned separately by appellant and appellee.
Notwithstanding defendant's failure to establish either of the essential elements of thirty years possession or possession to visible boundaries, as regards the lines common to plaintiff and defendant, appellant nevertheless contends the reference line from which appellee's one arpent front should be measured along Bayou Blue, should be fixed along a line of certain markers which the former common owner, Julien Theodore Porche set to establish the western boundaries of plaintiff's lands and the western boundary of the rear thirty arpents of defendant's property and to which alleged markers said former owner possessed while owning said estates in common. In this regard the record shows that while he owned the properties in *291 question, Julien Theodore Porche placed certain stobs or markers along the western or upper limits of his said lands from Bayou Blue to the rear thereof in the vicinity of the forty arpent line and possessed to said established boundary.
Assuming arguendo, possession by said former owners to the aforementioned markers was established in the record before us and assuming further said markers were such as to qualify as a visible boundary, the western boundaries of the properties involved herein cannot be adjudicated in this proceeding inasmuch as Toups, owner of the estate which forms the western boundary of both appellant's and appellee's property, is not a party to this action.
It is contended on behalf of appellant that when the former common owner, Julien Theodore Porche, sold to plaintiff's immediate predecessor, Thomas J. Porche, the property now owned by plaintiff, he assigned the upper or western limits of said one arpent tract as being the iron stobs which said common proprietor set to demark his own property from that of Toups above. In support of this argument, able counsel for appellant cites and relies upon LSA-C.C. Article 844 which provides as follows:
 "Art. 844. Designation by owner of
 two estates in the sale
 of one property
Art. 844. When an owner has alienated one of two estates, which belonged to him, and the ownership of any part of it is contested, the limits assigned to it by the vendor at the time of the sale, must be consulted. The limits anciently subsisting between the two estates, must not be regarded, because the designation, which the vendor makes of the metes and bounds, forms new limits between the two estates, or between the parts of them which he has sold."
Careful perusal of the Act of Sale from Julien Theodore Porche to Thomas J. Porche, however, discloses no mention therein of the location of the limits of the property conveyed. On the trial of defendant's exception of prescription considerable oral testimony was admitted without objection respecting the placing of the stobs by Julien Theodore Porche along the western line of his property and his allusion thereto as the western boundary of the tract conveyed to Thomas J. Porche, his son. In substance Thomas J. Porche testified that at the time of his purchase from his father, the latter made it clear the western line, marked by metal stobs driven into the ground, was intended to indicate merely the approximate boundary. Porche further stated that because the line was uncertain, he constructed his house in what he considered the center of the one arpent tract to avoid the possibility of infringing upon his neighbor on either side. When he constructed his fence on the upper side Porche located it near the line marked by the pegs but not directly on the line because he understood it was not exact. Although there is some evidence by other witnesses to indicate Julien Theodore Porche intended the line in question to serve as the western boundary of his property, the preponderance of the evidence is to the effect it was a mere approximation and was never accepted by the adjoining owners as the true boundary.
It is of some significance that while subject estates were at one time owned by a single proprietor, each parcel possesses a separate and distinct chain of title. Of further significance is the fact that when the common owner, Julien Theodore Porche, divided the lands, by disposition of it in two parcels as hereinbefore observed, in each said instance he employed a description substantially similar to that appearing in the acts whereby he acquired the property conveyed. Prior to their ownership by Julien Theodore Porche subject properties were owned as a single undivided tract by one Joachim Porche. So far as *292 the record discloses, the initial division into separate parcels occurred when the common owner, Joachim Porche, by an act of donation dated October 22, 1921, described the property presently owned by appellant in substantially the same manner as appears in the description contained in plaintiff's petition, and which defendant admits to be his property. The property owned by plaintiff appears to have been first described as a separate tract in an act of donation dated September 29, 1922, wherein Joachim Porche gave several tracts to his sons and expressly recognized the prior donation of the property presently owned by defendant herein. It appears that when Julien Theodore Porche again divided the property by selling it in two tracts as hereinabove shown, he intended to dispose of said parcels of land according to their ancient descriptions and did not purport to designate new limits for either tract.
In view of the foregoing observations we conclude our esteemed brother below correctly overruled appellant's exception of prescription.
On the merits defendant maintains the trial court erred in accepting and homologating as correct the proces verbal and survey of the judicially appointed surveyor. Only two witnesses testified on the trial of the merits, both being Civil Engineers and licensed surveyors. By stiplation of record, the testimony previously adduced on trial of defendant's exception of prescription was made part of the record pertaining to the merits.
Mr. J. C. Lovell, now deceased, made a survey of the adjoining estates pursuant to appointment by the trial court. His proces verbal appearing in the record is authentic in form and content and complies with all formalities prescribed by law. His testimony shows he began the survey by locating the southeast corner of Section 25, situated on the government traverse or meander line which meander line, in Lovell's opinion, represents the bank of Bayou Blue according to ancient titles. After locating the aforesaid fixed corner, Lovell took an offset therefrom southerly toward Bayou Blue a distance of 306 feet and from thence ran a line, parallel to the government traverse or meander line, westerly to defendant's west boundary line in Section 24 (plaintiff's east boundary), from which point he measured back or northerly to the government traverse on a line parallel to the east and west section lines. From this latter point Lovell measured ten arpents along the line to the Northeast corner of plaintiff's property, thus establishing plaintiff's east property line. From the thusly established northeast corner of appellee's lands, Lovell then ran a line westerly parallel to the front or government traverse a distance of one arpent, in this wise fixing and establishing plaintiff's rear or northern boundary.
In assailing Lovell's survey, astute counsel for appellant criticizes the procedure in two respects. First, it is contended Lovell did not adequately explain the method by which he located and ascertained his point of commencement of the survey, namely, the Southeast corner of Section 25. Secondly, counsel asserts that in determining plaintiff's rear line, Lovell should have measured ten arpents from the present bank of Bayou Blue rather than from the government traverse. The significance of this contention lies in the fact that measuring plaintiff's ten arpent depth from the government meander line, rather than the present bank of Bayou Blue, gives appellee a depth of approximately 12 arpents instead of the ten arpents depth recited in his title. In this regard counsel for appellant takes the position plaintiff is entitled only to the ten arpents depth stipulated in appellee's deed which bounds the property in front by Bayou Blue and, to measure the ten arpents depth thereof from the government traverse extends plaintiff's lands beyond the description in plaintiff's title. It is important to note the record does not disclose the distance between the meander line and the water's edge along a line perpendicular to the government traverse, but *293 it appears, however, said distance would be somewhat less than 366 feet which is the distance measured by Lovell along a diagonal line North 38 degrees East which bearing is parallel to the section lines and is the course along which the east line of plaintiff's property was established.
According to counsel for appellant, the northeast corner of plaintiff's property should have been placed by Lovell at a point 1920 feet from the water's edge, (an arpent measuring 192 feet), measured along the east line as determined by Lovell instead of 2386 feet from Bayou Blue which is the distance obtained when Lovell measured the 10 arpents depth commencing from the government traverse.
Defendant maintains the survey, being defective in the respects alleged, should not have been homologated by the lower court in the absence of corroborating testimony. In the alternative appellant seeks a remand so that a new survey may be made. We agree with the rule, cited by able counsel for defendant, to the effect that where a boundary survey is predicated on sound procedure, it should be accepted unless the record shows it to be incorrect. Smith v. Scarpengos, La.App., 56 So.2d 757. We do not agree, however, with the contention Lovell's survey has been shown to be defective, incorrect or predicated upon unsound procedure, for reasons hereinafter set forth.
Lovell's testimony clearly shows he located the southeast corner of Section 25, as a reference point for the beginning of the survey, from previous surveys made by him in the Township. Counsel for defendant strenuously argues he should have the opportunity of examining the field notes and surveys by which the aforesaid commencement point was established. The record reveals the case was left open at the end of the trial for the production of certain of Lovell's notes. It further appears an order was signed January 18, 1963, fixing the time for filing briefs by both parties, upon plaintiff's suggestion as follows:
"* * * that this matter was duly fixed for hearing and came up for and was duly tried, the record remaining open for furnishing to defendant, through his counsel, of data pertinent to the survey as to which this court commented `but I don't know if they are going to be put into the record' that, excepting for that data, the matter has been completely heard and there has been furnished to counsel for defendant excerpts from the field notes of Mr. Lovell comprising 23 legal size pages and 9 pages of photostat; that the same was examined by counsel for defendant and returned to mover with the comment that it was all right to place them of record and if need be he would make further reference to them therefrom; that the same are attached hereto.
On further suggesting to the court that each litigant should be given a fixed period for filing of briefs herein in order that an adjudication of the subject may be had by this Honorable Court."
Significantly, learned counsel for defendant has failed to show any omissions or deficiencies in Lovell's field notes which would establish error in the latter's location of his reference or commencement point. Under the circumstances shown, we conclude our esteemed colleague correctly accepted and homologated the survey as being procedurally sound and proper.
It is also argued on behalf of appellant that Lovell should have commenced his survey along plaintiff's upper or western line rather than the eastern or lower boundary. No sound reason is advanced by learned counsel for appellant in support of this position and none has occurred to us. Assuming arguendo, Lovell had commenced his survey from the west, we fail to see wherein it would have changed his location of the sidelines of the respective properties *294 inasmuch as Lovell testified unequivocally that every property owner in Sections 24 and 25 has all the frontage called for in their respective titles, there being no shortage of frontage in either section.
Mr. T. Baker Smith, Civil Engineer and Surveyor, corroborated Lovell's testimony to the effect there is a full forty arpents depth in Section 24 between the government traverse and the forty arpent line at the rear of the section. Smith further pointed out the South line of the section is slightly shorter than its North line because the rear or forty arpent lines of those sections fronting on Bayou Blue are perpendicular to the side lines while the government traverse at the front of Sections 24 and 25 runs approximately east and west on the front of those particular sections. A map of the Township, introduced in evidence, shows the general course of Bayou Blue in subject township is from northwest to southeast, and the section lines, as previously pointed out, run in a direction approximating southwest to northeast. However, as also previously mentioned, a curve or bend in Bayou Blue results in an eastwest front in the section herein concerned. The conditions noted, according to Smith, explain the fact that the west line of Section 24, from the government meander line to the forty arpent line in the rear of the section, measures more than forty arpents. Therefore, location of plaintiff's rear line ten arpents from the government traverse, leaves appellant more than the thirty arpents called for by his title. The testimony clearly reveals there is no shortage whatsoever in the section, either of frontage or depth.
On the contrary, the expert testimony shows (and counsel for appellant admits inasmuch as he is claiming same for defendant) there is a surplus in depth inasmuch as there is additional property situated between the government traverse and the present bank of Bayou Blue. It is not shown in the record when this accretion developed if in fact such excess resulted from an accumulation which diminished the width of Bayou Blue. All parties agree, however, such excess belongs to the various riparian owners along the bayou. From the record it is also clear appellant has benefited from the excess of surplus along his entire four arpent front just as plaintiff claims the excess on the front of his property as accretion.
Nevertheless, appellant contends the former common owner had the right to sell his accretion with which premise we are in complete accord. On this premise it is argued that when Julien Theodore Porche sold plaintiff a tract one arpent front on Bayou Blue by a depth of 10 arpents said vendor was obliged to deliver only 10 arpents from the Bank of Bayou Blue including existing accretion, and any excess resulting from accretion was retained by said vendor. Assuming arguendo, the banks of Bayou Blue were the same when the common owner disposed of said properties as they were at the time of the sale to plaintiff, the thrust of appellant's foregoing argument would militate against appellant as will hereinafter appear.
When the properties in question were first separately described, the lands acquired by appellant were first alienated. Therefore, the common owner, who disposed of only the rear thirty arpents to appellant's predecessor in title by act of donation in 1921, perforce retained the remainder. Subsequent sales by intervening owners described subject tracts in substantially the same manner as the descriptions severing the once common estate. Appellant, therefore, can claim by deed only what his deed calls for, namely, thirty arpents. To garner any excess he must do so by prescriptive title which he has failed to establish herein.
Mr. Lovell's testimony shows he located the lines according to ancient titles which included an act of donation from Joachim Porche to his son, Julien Porche, dated October 22, 1921, wherein the one by 10 arpents lying to the north of appellant's *295 tract was described as "the upper one arpent fronting on the 10 arpent line back from said bayou, running therefrom the depth of survey thirty arpents more or less, from the 10 arpent line." Lovell's testimony in effect shows that the aforesaid description could mean only that the donor in the aforesaid act intended the property thusly described would commence from a line 10 arpents north of the government traverse since the meander line was the only point from which the mentioned 10 arpent line of commencement could be determined. Lovell's procedure was no wise disparaged by Smith. Conversely, Smith's testimony corroborates Lovell's which, in our judgment, appears well founded and predicated on sound principles.
It is settled jurisprudence that where the proces verbal of a court appointed surveyor appears sound and is founded on sensible, well grounded principles it is entitled to judicial approval in the absence of expert testimony contradicting the surveyor's accuracy. Scott v. Smith, La.App., 98 So.2d 552. Accordingly, we conclude our esteemed colleague correctly approved and homologated the survey in question.
The district court taxed all costs, including the cost of survey, against defendant. Although counsel for defendant does not allege said assessment of costs to constitute error on the part of the lower court, we will discuss and dispose of this ancillary matter to foreclose the issue.
While appellant does not expressly admit it is necessary to establish the boundaries between subject properties the record, nevertheless, conclusively shows said boundaries have never been established and remained unmarked by man or nature. It further appears that prior to institution of suit the parties attempted an amicable establishment of the boundaries by survey, but the delimiting procedure was stopped when defendant discovered the result would not be what he desired. Having forced this boundary action, defendant is liable for all costs thereof. Olivier v. Melancon, La. App., 40 So.2d 683; Christen v. Coulon, La. App., 94 So.2d 47.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.