260 So.2d 350 (1972)
Mrs. Verona Bonvillain RICHARD et al.
v.
Calvin COMEAUX.
No. 8767.
Court of Appeal of Louisiana, First Circuit.
March 13, 1972.
*351 Joseph L. Waitz, Waitz & St. Martin, and Philip E. Henderson, Henderson, Hanemann & Morris, Houma, for appellants.
Stanwood R. Duval, Jr., Duval, Arceneaux & Lewis, Houma, for appellee.
Before BLANCHE, TUCKER and COLE, JJ.
COLE, Judge.
We have before us an appeal from a judgment of the 17th Judicial District Court, Parish of Terrebonne, in which a rule for a preliminary injunction incidental to a possessory action was made absolute in favor of the plaintiffs. This action was initiated by the seven heirs of Alice Trahan Bonvillain and Joseph Bonvillain and is in response to attempts by the defendant herein to possess certain real property allegedly left those heirs by their parents.
More specifically, by judgment of possession dated August 17, 1966, the Bonvillain heirs acquires title to the following property:
A certain tract of land, situated in the Parish of Terrebonne, Louisiana, measuring one arpent front, more or less, on the right descending bank of Bayou Black by depth of survey, at about nine (9) miles from the City of Houma, bounded above by land owned by Emile Trahan, now or formerly, and below by land owned by Paul Trahan, now or formerly.
Comeaux owns the tract immediately adjoining and paralleling their property to the west. Both estates front to the south on a Terrebonne Parish public road bordering Bayou Black and appear to run to the north between generally parallel lines. In March of 1970, the defendant began the construction of a fence dividing his estate from that of the Bonvillain heirs along a line which he believed to be his easternmost boundary. On March 24, 1970, the plaintiffs herein demanded by letter that Comeaux cease and desist his activities concerning the fence and that all construction be immediately removed. This action failing to gain the desired results, the present litigation was instituted on April 23, 1970. The matter came on for hearing on July 23, 1970, and on October 7, 1970; and, in a subsequent judgment, the action was decided favorably to the plaintiffs; therein, the defendant was enjoined from further action along the line which he claimed to be his easternmost boundary and was directed to remove all construction which he had placed thereon.
As noted in the thorough and exhaustive written reasons for judgment rendered by the trial judge, the record reflects that the plaintiffs' mother acquired the Bonvillain tract as her separate and paraphernal property on January 30, 1916. The testimony of her children at the trial indicates that she lived upon this property until approximately a year and a half prior to her death in 1966. For that period of time and for possibly a year after her death, no one lived on the property. However, Elward J. Giroir continued to grow sugar cane under a lease for that purpose on all of the property except the home site and the grounds and gardens immediately surrounding it. He and the plaintiffs testified that during this period of time they maintained the property in the way and to the extent that it had always been cared for through the years. During the year 1967, the southern most *352 part of the tract, including the family house, was leased to Donald Joseph Giroir who positively stated that he continued to maintain the property on its western boundary to the limits exercised by its previous occupants.
It seems that in the weeks prior to March of 1970, Comeaux ordered a survey of his eastern boundary which indicated to him that he owned along a line some five to ten feet to the east of the Bonvillain's old fence line. Although we note that the results of that survey were not testified to at the trial, they apparently satisfied Comeaux to such an extent that he commenced the construction of his fence immediately thereafter, this structure being a wooden fence for the first thirty or forty feet running south to north, and from that point, northerly, barbed wire.
The Bonvillain heirs claim continued and uninterrupted possession to a point along the disputed boundary represented by the middle of what was once a drainage ditch or canal running in a north-south direction along the western edge of their property. The record indicates that the ditch was once a viable drainage canal which has, in time, become filled by the cutting of debris, gradual filling, and the development by the adjoining landowners of their lawns. The remains of the ditch, although readily visible, are now a part of those lawns and amounts to nothing more than an indentation on the landscape.
In addition to the natural boundary created by the ditch, it seems that Mr. Bonvillain, prior to his death in 1949, constructed a barbed wire fence on the east bank of the canal as a cattle enclosure, the remains of which were still evident at the time of trial. The fence was well remembered by several of the plaintiffs' witnesses and, indeed, seems to be partially visible on photographs entered as P-20 and P-21, which were taken in 1957.
The Bonvillain heirs contend that possession sufficient to maintain the possessory action has been established to the middle of the drainage canal and certainly to the remains of the fence constructed on its east bank.
At the hearing, numerous witnesses testified concerning the events which have transpired between these estates since Comeaux's acquisition of his tract in 1963. Although much contradiction exists which is incapable of reconciliation, certain consistencies are evident in the testimony. It seems that at the time of his purchase, a heavy undergrowth existed along and around the ditch which Comeaux set out to clean up and beautify, even to the extent of bringing a bulldozer in to remove stumps. These commendable efforts on his part apparently caused no friction at the outset; however, as time passed, Mr. Comeaux began to include in the moving of his lawn certain of the property east of the ditch and east of the remains of the fence, which was in disrepair by this time.
Mr. Comeaux, and other defense witnesses, testified that he continued to mow the grass several feet beyond and east of the ditch through the years preceding and subsequent to Mrs. Bonvillain's death. By his own admission, however, he stated that, at no time prior to the construction of his fence, did he place any structure or edifice of any kind at any point beyond the drainage ditch which would indicate adverse possession to the adjoining landowner.
In supporting the plaintiffs' demand, the trial judge relied upon our Supreme Court's decision in the case of Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). He found the case at bar to be within the ambit of pronouncements therein which preserve to the landowner the possessory action where he civilly possesses only, and such civil possession has followed corporeal possession. In so concluding, he found that the possessory action would lie here due to the Bonvillain's and their heirs' and assigns' continued and undisturbed possession of the disputed area to the drainage ditch and old fence line. We are in accord with that judgment and find that the evidence fully supports such a conclusion.
*353 Louisiana Code of Civil Procedure Article 3658 sets out the basic requirements for the possessory action in the following terms:
"To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance."
In pertinent part, C.C.P. Article 3660 further defines the term "possession":
"A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper."
In the case of Kilchrist v. Conrad, 191 So.2d 705 (La.App. 3rd Cir. 1966), we find this commentary on corporeal possession:
"Our jurisprudence has established that the `corporeal' possession required to institute a possessory action is identical to the corporeal possession required for the acquisitive prescription of 30 years. LSA-C.C. Articles 3499-3505; Hill v. Richey, et al, 221 La. 402, 59 So.2d 434; Johnson v. Merritt, 131 So.2d 562 (La. App.2nd Cir. 1961); Case v. Jeanerette Lumber & Shingle Company, Inc., 79 So.2d 650 (La.App. 1st Cir. 1955); Broussard v. Motty, 174 So.2d 246 (La.App. 3rd Cir. 1965). These cases generally describe `corporeal possession' as actual, physical, open, public, unequivocal, continuous, uninterrupted and showing an intent to possess as owner; it must be evidenced by an enclosure of some type to definitely fix its limits; it must be evidenced by some external and public signs sufficient to give notice to the public and all the world of the character and extent of the possession; also it must be possession of a type for which the land is destined or suitable."
Plaintiffs have adequately proven possession sufficient to sustain the possessory action. Mr. Stanley Marchand, an employee of T. Baker Smith & Son, Inc., Civil and Consulting Engineers, testified that they were hired by the plaintiffs to inspect the disputed area to determine what vestiges of the old fence remained or to discover any other indications of possession that might be present. He testified that he and a crew checked the line from south to north for the entire depth of the property and that, though neglected, numerous remains of the Bonvillain fence still existed. Indeed, the photographs taken by Marchand and his group, and filed into evidence as plaintiffs' exhibits, plainly show wire still imbedded in trees and old fence posts with wire still attached down along the line described by plaintiffs.
Furthermore, the plaintiffs have testified that their possession to the ditch and old fence line has remained undisturbed for some fifty-four years. Even after the drainage ditch filled and the surrounding underbrush was removed, they and their lessees maintained the property to the center of the ditch and remained cognizant of the presence of the old fence line erected by their father.
Of paramount importance also is the defendant's inability to demonstrate that he established possession of that property claimed by the Bonvillain heirs in a way sufficient to oust the plaintiffs from their occupancy, other than the construction of the fence which immediately precipitated *354 the filing of this suit. Clearly, such inoffensive acts as the mowing of grass on the Bonvillain side of the ditch could not be considered to constitute a usurpation of plaintiffs' dominion over the disputed area and obviously, the Bonvillains, if they knew that such was going on, did not consider it to be so. See Hebert v. Chargois, 106 So.2d 15 (La.App. 3rd Cir. 1958), and authorities cited therein. Had the defendant been able to offer evidence that the plaintiffs had not enjoyed quiet and uninterrupted possession for more than a year prior to the disturbance created by the construction of his fence, it is conceivable that, under the terms of C.C.P. 3658 (2), supra, the possessory action might have been defeated. The occasional encroachment by a lawnmower, however, is not sufficient indication that one's possession is endangered.
We find that each of the requisites of C.C.P. Article 3658 has been satisfied and that the plaintiffs are entitled to have their right to possession of the contested property recognized and are further entitled to be maintained in possession thereof. While the judgment of the trial court had the effect of maintaining them in possession and is, to that extent, affirmed, we find that the trial court erred in ordering the defendant to remove the fence he had begun constructing. The prayer of plaintiffs' petition sought the finality of a permanent injunction and to have the defendant assert his ownership in a petitory action within a specified length of time or thereafter be precluded from ever so doing. It is not equitable to order the removal of the partly constructed fence unless the defendant fails to bring his petitory action or, having brought same, fails to prevail therein. This appeal was taken without the trial court having acted upon the prayer for a permanent injunction and without treating the merits of plaintiffs' prayer to have the defendant assert title in a petitory action. However, we deem the record on appeal to adequately support the relief prayed for and, pursuant to C.C.P. Article 2164, this Court will amend and recast the judgment of the lower court to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that the defendant, his agents, employees and all others acting in his behalf be and they are hereby permanently enjoined and prohibited from obstructing or interfering with the possession by plaintiffs of the immovable property in dispute and which forms the basis for this litigation.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the right of the plaintiffs to the possession of said immovable property be and the same is hereby recognized; and, said plaintiffs are hereby maintained in possession thereof.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendant is to assert his adverse claim of ownership of the said immovable property in a petitory action to be filed within sixty (60) days after the date this judgment becomes executory, and in default thereof said defendant is thereafter precluded from asserting the ownership thereof; and, in further default of which the said defendant is ordered to remove the aforesaid partly constructed fence from said property, together with any and all other construction or indicia of ownership that he may have placed thereon."
Defendant-appellant is cast for all costs of these proceedings.
Judgment reversed in part, affirmed in part as amended, and recast.