292 So.2d 319 (1974)
Murray AUTHEMENT
v.
Robert E. THERIOT.
No. 9535.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
*320 A. Deutsche O'Neal, Houma, for appellant.
Edward James Gaidry, Houma, for appellee.
Before LOTTINGER, BLANCHE and CRAIN, JJ.
BLANCHE, Judge.
Plaintiff-appellee, Murray Authement, instituted suit against defendant-appellant, Robert E. Theriot, seeking to have the boundary between the contiguous estates of the litigants located in Terrebonne Parish judicially fixed and determined. The trial court ordered a survey performed by William Clifford Smith, registered civil engineer and land surveyor. From the judgment of the trial court homologating the proces verbal of the court-appointed surveyor, defendant-appellant perfected this suspensive appeal. We affirm.
Plaintiff and defendant admit they have a common ancestor in title, namely, Theophile Blanchard. A review of the instruments of title is significant in resolving the issues presented by this appeal.
Theophile Blanchard by a dation en paiement executed on January 7, 1927, granted to his daughter, Angelle Blanchard, femme sole, a tract of land described as follows:
"A certain tract of land at Bourg, Parish of Terrebonne, Louisiana, lying on the right descending bank of the Bayou Terrebonne, measuring three quarters of an arpent front on the said Bayou by depth of survey; bounded above by land of vendor and below by land of vendor; together with the buildings and improvements on the said tract of land, said property being located so as to extend equidistant from the dwelling house of said vendor on each side thereof the full depth of survey, between parallel lines and so measured as to include said house with a strip on each side thereof, making the whole measure three quarters of an arpent by depth of survey." (Record, p. 51)
Angelle Blanchard conveyed to Elgin J. Blanchard by deed executed on February 10, 1931, a portion of the aforementioned property acquired from her father on January *321 7, 1927, described in the deed as follows:
"A certain tract of land situated in the Parish of Terrebonne, La. at about 9 miles below HOUMA, lying on the right descending bank of Bayou Terrebonne, measuring such front on said right bank, by depth of survey between parallel lines, as may be found between the upper line of the tract of land now belonging to present purchaser and the center of a large ditch emptying into said bayou near the lower boundary of said vendor's present property; a line to be drawn from the center of said ditch at the said bayou and extended back to the full depth of survey, between parallel lines, shall constitute the upper boundary of the said tract herein sold: together with all rights, ways and servitudes thereunto belonging or appertaining. Being part of the same property which said vendress [sic] acquired by purchase from her father, Theophile Blanchard, on the 7th day of January 1927, by act passed before Robert P. Blanchard, a Notary Public of this parish." (Record, p. 49)
Angelle Blanchard conveyed the balance or the remainder of the property which she had acquired from her father on January 7, 1927, to Morris Reynold Boquet and his wife, Joyce Frances Pitre Boquet, by deed executed on April 21, 1954, the property being described as follows:
"A certain tract of land at Bourg, Parish of Terrebonne, State of Louisiana, lying on the right descending bank of Bayou Terrebonne, measuring three quarters of an arpent front on the said bayou by depth of survey, bounded above by land of Ferdnand Boquet and below by land of William Detiveaux, and in the rear by estate of Ernest Kelly (now or formerly) and in front by the aforementioned Bayou Terrebonne; said property lies in Sections 10 and 11 Township 17S Range 18E, and Section 7 Township 18S Range 18E; estimated to contain approximately seven and five tenths (7.5) acres, together with all buildings and improvements thereon.
"Being the remaining property which vendor acquired from her father, Theophile Blanchard, on January 7, 1927, Entry No. 4157, COB 86, Folio 172 of the records of the Clerk of Court Terrebonne Parish, La." (Record, p. 38)
Morris Reynold Boquet and his wife, Joyce Frances Pitre Boquet, in turn, conveyed the property to defendant-appellant, Robert E. Theriot and his wife, Eva Auenson Theriot, by deed executed on May 25, 1956, in which the property is described as follows:
"A certain tract of land at Bourg, Parish of Terrebonne, State of Louisiana, lying on the right descending bank of Bayou Terrebonne, measuring three quarters of an arpent front on the said bayou, by depth of survey; bounded above by land of Ferdinand Boquet, and below by land of William Detiveaux, and in the rear by estate of Ernest Kelly (now or formerly) and in front by the aforementioned Bayou Terrebonne; said property lies in Sections 10 and 11, Township 17S, Range 18E and Section 7, Township 18S, Range 18E; estimated to contain approximately seven and five tenths (7.5) acres, together with all buildings and improvements thereon.
"Being the same property which vendor acquired from Miss Angelle Blanchard in an act of sale before the undersigned Notary Public on 21st day of April 1954, which said act [of] sale is duly recorded in the records of the Clerk of Court, Parish of Terrebonne, in COB, 207, Folio 193, Entry No. 129,891." (Record, p. 34)
Madison L. Funderburk acquired the property, part of which was ultimately acquired by plaintiff-appellee, from a succession sale involving the Succession of Theophile Blanchard and Wife dated June 7, 1930, the property in question being more *322 particularly described in the succession sale as follows:
"A certain tract of land, situated in the Parish of Terrebonne, Louisiana, lying on the right descending bank of Bayou Terrebonne, at about nine miles below Houma, measuring four and one-half (4½) arpents, more or less, front by depth of survey thereto belonging; bounded above by property of Felix Blanchard or assigns, and below by the property of Elgin Blanchard or assigns; together with all the buildings and improvements thereon.
"Being the same property acquired by the late Theophile Blanchard by acts of record in C.B. DD, fo. 538; C.B. GG, fo. 300; C.B. NN, fo. 31; C.B. RR, fo. 314; C.B. 62, fo. 496; C.B. 91, fo. 269.
"LESS AND EXCEPTING: A tract measuring three-fourths of an arpent front on the said bayou by depth of survey conveyed to Miss Angele Blanchard,[1] January 7th., 1927, by act of record in C.B. 86, folio 173 et seq., to which act special reference is hereby made for greater certainty of description." (Record, p. 45)
Madison L. Funderburk, in turn, conveyed this property to Jules Boquet on June 30, 1930, the property being described in the instrument as follows:
"A certain tract of land situated in the Parish of Terrebonne, State of Louisiana, and lying on the right-descending bank of the Bayou Terrebonne, at about nine miles below the City of Houma, said tract measuring aproximately [sic] from two and one quarter to two and one half arpents front on the said Bayou by depth of survey, it being, however, the intention of the vendor to convey and the purchaser to acquire whatever frontage may be found between the boundaries given; bounded in front by the Bayou Terrebonne, in the rear by the Little Caillou lands, above by the land of Felix Blanchard and below by the land of Miss Angele Blanchard; together with all improvements, rights, ways, privileges and servitudes thereunto belonging. Being the same property acquired by the present vendor from the Succession of Theophile Blanchard and wife on the seventh day of June, 1930, at Sheriff's Sale, duly recorded in C.B. 94, folio 170 et seq., of this Parish, less that portion thereof conveyed by him to Elgin J. Blanchard, on the 13th day of June, 1930, per act before H. M. Wallis, Jr., Notary Public, duly recorded in C. B. 94, folio 173 et seq., of this Parish." (Record, p. 46)
Jules Boquet, in turn, conveyed a part of this property to Ferdinand J. Boquet on September 3, 1941, the property being conveyed described in the instrument as follows:
"A certain tract of land, situated in the Parish of Terrebonne, State of Louisiana, at about nine miles below the City of Houma, and lying on the right descending bank of the Bayou Terrebonne, measuring a frontage of one and one-half (1½) arpents on the said right descending bank of the said Bayou by depth of survey thereto belonging, between parallel lines, bounded above by the land of vendor, below by the land of Miss Angele Blanchard, in front by the said Bayou Terrebonne, and in the rear thereof by lands on Little Caillou; together with all improvements thereon, and all rights, ways, privileges and servitudes thereunto belon[g]ing, or in any wise appertaining.
"Being part of the same property which was acquired by the present vendor from Madison L. Funderburk on June 30th, 1930, per act duly on record in Conveyance Book 94, at folio 188 et seq., of *323 Terrebonne Parish, Louisiana." (Record, p. 42)
Ferdinand J. Boquet, in turn, conveyed a portion of this property which he had acquired from Jules Boquet to Ocie Lee Mitchell by deed executed on September 17, 1957, wherein the property conveyed was described as follows:
"A certain tract of land situated in the Parish of Terrebonne, State of Louisiana, at about nine miles below the City of Houma, Louisiana and lying on the right descending bank of the Bayou Terrebonne, but not fronting thereon; said tract of land measuring a front of Sixty (60') feet on a shelled public road by depth of one hundred twenty (120') feet between equal and parallel lines; bounded above and in the rear by land of vendor, Ferdinand J. Boquet, and below by land of Miss Angele Blanchard formerly, now Robert Theriot, and in front by the said shelled public road.
"Being a portion of the same property acquired by the vendor herein from Jules Boquet on September 3, 1941 and recorded in C.B. 131, folio 3, Entry No. 47,684, Terrebonne Parish, Louisiana." (Record, p. 73)
Ferdinand J. Boquet then conveyed a tract of land to plaintiff-appellee, Murray Authement, by deed executed on April 6, 1970, the property being described as follows:
"A certain tract of land situated in the Parish of Terrebonne, State of Louisiana, about nine (9) miles below the City of Houma, and lying on the right descending bank of the Bayou Terrebonne, measuring one hundred forty-two (142') feet front on said right descending bank of the Bayou Terrebonne by depth of survey thereto belonging between parallel lines; bounded above by the land of vendor, and below by the property of Robert Theriot, in the rear by lands on Little Caillou, and in front by the Bayou Terrebonne; the easternmost portion of said property being shown and delineated on a copy of a map made by the Office of T. Baker Smith & Son, Inc., dated March 4, 1970, which is hereto attached and made a part hereof; said map shows only the eastern portion of said property, and is attached hereto for the primary purpose of showing that the depth from the Bayou Terrebonne runs between parallel lines on a bearing of N 80° 42' 43" East;[2] together with all rights, ways, privileges and servitudes thereunto belonging or in anywise appertaining.
"LESS AND EXCEPTING: A lot of ground sold to Ocie Lee Mitchell on September 17, 1957, by act which is of record in COB 249, folio 58, Terrebonne Parish, Louisiana." (Record, p. 57)
The dispute between plaintiff and defendant concerns the proper location of the boundary between their contiguous tracts of land, i. e., the location of the western boundary of defendant's land and the eastern boundary of plaintiff's land. Plaintiff claims, and the court-appointed surveyor concurred, that this boundary is a line having a bearing north 08 degrees, 42 minutes, 43 seconds east and that plaintiff's tract of land, accordingly, is 142 feet wide between parallel lines by a depth of survey. Defendant contends, however, that the boundary line between his property and that of plaintiff-appellee, Murray Authement, is a line running parallel to a large drainage ditch so that defendant's property is three quarters of an arpent in width with its eastern boundary being the drainage ditch and its western boundary being a line parallel to the drainage ditch and located three quarters of an arpent in perpendicular distance therefrom.
Defendant's first specification of error is that the trial judge erred in failing to rescind the order appointing William Clifford Smith to perform the survey for *324 the reason of alleged bias and prejudice on the part of William Clifford Smith in favor of Murray Authement, for the reason that William Clifford Smith had performed a prior survey for Murray Authement. We find from our review of the record no abuse of the trial court's discretion in refusing to rescind its order appointing William Clifford Smith to perform the survey. The evidence shows that William Clifford Smith had likewise performed a prior survey for defendant-appellant, and his alleged lack of proper objectivity is not supported by the record.
We likewise find no merit to defendant's contention that the trial court in accepting and homologating the survey and boundary determination by William Clifford Smith.
We note with particular significance that defendant's ancestor in title, Angelle Blanchard, acquired a tract of land described as having frontage of three quarters of an arpent on the right descending bank of Bayou Terrebonne, the side boundaries of which were described as being "between parallel lines," and out of this one tract of land Angelle Blanchard, in turn, conveyed a portion thereof to Elgin J. Blanchard, being the property of Angelle Blanchard located east of the large drainage ditch which defendant now claims was the eastern boundary of the property of his ancestor in title, Angelle Blanchard. Clearly, such cannot be so, for in order for Angelle Blanchard to convey the property lying east of the drainage ditch, her initial eastern boundary would likewise have had to have been to the east of the large drainage ditch; otherwise, she would have conveyed to Elgin J. Blanchard property which she did not own.
Admittedly, the reference in the property description to the effect that the property conveyed by Angelle Blanchard to Elgin J. Blanchard was a tract of land having side boundaries "between parallel lines" is confusing and, undoubtedly, as concluded by
William Clifford Smith, erroneous, and instead the property conveyed by Angelle Blanchard to Elgin J. Blanchard was in truth a triangular-shaped tract of land having as its western boundary the large drainage ditch in question and having as its eastern boundary the original eastern boundary of the property of Angelle Blanchard, which would be a line having a bearing north 08 degrees, 42 minutes, 43 seconds east. The conclusions of the court-appointed surveyor relative to the location of the property of Angelle Blanchard in comparison with the other property are cogent and in this regard we reproduce approvingly the following excerpts from his testimony:
"Q What conclusion did you reach with regard to the property of Robert Theriot and Murray Authement?
"A Well, we concluded that if you were to establish the fact that the depression in Robert Theriot's front yard is the house, and you backed off equal distance from that house to acquire three-quarter arpents front and you made those property lines parallel and parallel to the properties that came out to the North and came out generally to the South that you would end up with a line as shown on our map as AB. Also considering the sale from Angela Blanchard to Elgin Blanchard that the ditch on the lower side of Robert Theriot's property has been sold and is not part of the possession and, therefore, you would ignore the direction of that particular ditch in relationship to the lines. If you did not ignore that ditch, then all of the property lines to the North of the line between Murray Authement and Robert Theriot would not conform to the existing possession and to the surveys that have already been made in that area. *325 * * * * * *
"THE COURT:
"Q Mr. Smith, as I understand it, the result of your title search in connection with the making of this plat was that you found that Angelle Blanchard had some years ago had an instrument recorded as Entry No. 4157 acquired from Theophile Blanchard a three-quarter arpent front tract on the right descending bank of Bayou Terrebonne. Is that correct?
"A Yes.
"Q And also that the width and place of that tract was tied in by description to a house that had existed apparently at that time?
"A Right.
"Q And that the upper and lower lines which were to be parallel were situated one-half of three-quarters of an arpent distant from either side line?
"A Yes.
"Q And that you located what you believed to be the former site of the house by a depression in the ground?
"A Right.
"Q Measured one-half of three-quarters of an arpent in either direction from the center line of that depression, and thus arrived at what you believe to be the location of the three-quarter arpent tract which Miss Blanchard had acquired from her father?
"A Right.
"Q All right. I think you also testified and I want to be sure about this that you placed the upper line as is shown on your plat, D-2, and also on D-7 and that you found the location of the lower line to be some 15 feet approximately below the center line of this large drainage ditch which is perpendicular to the bayou, more or less? Generally perpendicular to the bayou?
"A Right."
(Transcript of Testimony, Record, pp. 28, 49-50)
In Porche v. Martin, 177 So.2d 288 (La. App. 1st Cir. 1965), we had occasion to comment upon the standard of appellate review which should be applied relative to a trial court's homologation of a court-appointed surveyor's boundary determination, viz.:
"It is settled jurisprudence that where the proces verbal of a court appointed surveyor appears sound and is founded on sensible, well grounded principles it is entitled to judicial approval in the absence of expert testimony contradicting the surveyor's accuracy. Scott v. Smith, La.App., 98 So.2d 552." (Id. at 295)
As in Porche v. Martin, supra, we find from our review of the record herein that the conclusions of the court-appointed surveyor in the instant case are sound and founded on sensible and well-grounded principles, and the trial court correctly approved and homologated the survey in question.
Appellant's next specification of error is the failure of the trial judge to maintain appellant's alternative plea of ownership of the property claimed by appellant through ten years' acquisitive prescription. This specification of error is likewise without merit.
In opposition to this plea of ten years' acquisitive prescription, counsel for plaintiff-appellee contends that defendant's title *326 cannot suffice as the requisite[3] "just title" necessary to support this plea. Counsel for plaintiff is in error in this regard.
The Louisiana Supreme Court in Snelling v. Adair, 196 La. 624, 199 So. 782 (1940), confirmed prior jurisprudence and recognized that a deed sufficient to convey property as between the parties is also a sufficient basis for a plea of ten years' prescription acquirendi causa; and although a portion of the description in a deed be erroneous or misleading, if the property intended to be conveyed can be ascertained with certainty by the aid of admissible extrinsic evidence which can identify and locate the property, a just title for purposes of ten years' acquisitive prescription will exist. The fact that property is described as being bounded on the various sides by the estate of another can suffice in this regard.
Clearly, the description contained in defendant's deed is sufficient to transfer the property from his vendor to him, and the requirement of just title for purposes of ten years' acquisitive prescription is here present.
To support the plea of ten years' acquisitive prescription, defendant-appellant must also establish the requisite good faith possession.[4] The possession required must have been "continuous and uninterrupted, peaceable, public and unequivocal."[5] In this respect defendant's possession, as well as the possession of his ancestors in title, is deficient, and the trial judge, accordingly, properly rejected the plea. The record utterly fails to establish any extent or delineation of possession by defendant which could possibly be categorized as unequivocal, notorious and sufficient to place the real owner of the property on notice that such adverse possession existed. Following defendant's purchase in 1956, he permitted his neighbor, Ferdinand J. Boquet, to continue to farm the property for that year. Defendant then claims he farmed the property for one year, which farming he then abandoned, following which his brother, Harold A. Theriot, farming a part of the property for one year. Mr. Harold A. Theriot testified he did not know where any boundary existed between his brother's property and the property owned by Ferdinand J. Boquet. Indeed, Mr. Harold A. Theriot further testified *327 that he did not know if the garden was on his brother's property or on the property of Ferdinand J. Boquet but stated that Ferdinand Boquet helped him with the garden. Thereafter, the only possession exercised by defendant was occasional grass cutting, and defendant admitted that on frequent occasions Ferdinand J. Boquet would cut all of the grass, without any differentiation being made between the respective claimed estates of the contiguous landowners.
The possession necessary to maintain the plea of ten years' acquisitive prescription depends upon the nature and character of the land, Snelling v. Adair, supra, and the mere occasional grass cutting in and of itself would not suffice herein to constitute the requisite adverse possession for this rural residential property, cf., Richard v. Comeaux, 260 So.2d 350, 354 (La.App. 1st Cir. 1972).
It is likewise clear from a review of the record that none of the respective predecessors in title ever established any boundary between the claimed estates or other indicia of possession. Miss Angelle Blanchard testified that there never was any definite upper boundary line between her property and the property of Jules Boquet or his transferee, Ferdinand J. Boquet. On the contrary, she testified that all of the property was farmed as one tract.
Mrs. Joyce Malcolm, the former Mrs. Morris Boquet, testified that her ex-husband was the brother of Ferdinand J. Boquet. She likewise confirmed that there never existed any upper boundary, markings or indicia of possession differentiating the property which she and her ex-husband acquired from Angelle Blanchard, on the one hand, and the property owned by Ferdinand J. Boquet, on the other. She testified that her ex-husband, Morris Boquet, enjoyed good relations with his brother Ferdinand J. Bouquet, and no one ever felt there was any need to ascertain the boundary between the two estates.
The isolated incidents of possession by defendant were not in any way sufficiently unequivocal and notorious so as to satisfy the requirement of continuous possession necessary to maintain the plea of ten years' acquisitive prescription. Similarly, there was never any exercise of adverse possession by any of defendant's ancestors in title so as to support such a plea.
Defendant's next specification of error, relative to the trial judge's refusal of defendant's alternative plea of thirty years' acquisitive prescription, is likewise without merit, as the record clearly negates the existence of any such adverse possession by defendant's ancestors in title which could be tacked by defendant to his likewise inadequately claimed adverse possession so as to support the plea.
Defendant finally complains of the assessment of all costs of this boundary action to him, contending that one-half of those costs should have been assessed to plaintiff. The applicable law relative to this issue was summarized by the intermediate appellate court in Christen v. Coulon, 94 So.2d 47 (La.App. Orl. Cir. 1957), writ refused, as follows:
"Ordinarily it is the rule that the costs of the survey must be divided between the parties. LSA-C.C. art. 663; Tircuit v. Pelanne, 14 La.Ann. 215; Lafaucia v. Wagner, 7 La.App. 180; Gaubert v. Gaubert, 1 La.App. 719. But where the defendant resists plaintiff's demand to have their boundaries fixed in accordance with their respective titles and compels a suit, the provisions of LSA-C.C. art. 663 do not apply and he should be condemned to pay the whole cost of the survey and not only one half. Dufrene v. Bernstein, 190 La. 66, 181 So. 859; Gaude v. Williams, 47 La.Ann. 1325, 17 So. 844; Miller v. Welsh, La.App., 66 So.2d 25; Fairbanks v. Louisiana Central Lumber Co., La.App., 163 So. 209; Lafaucia v. Wagner, supra." (Id. at 54, 55)
*328 Inasmuch as defendant resisted plaintiff's demand to have their boundary affixed in accordance with their respective titles and compelled the filing of this litigation, the trial court committed no manifest error in assessing defendant with all costs of this proceeding.
For the foregoing reasons, the judgment of the trial court is affirmed, with all costs of this appeal assessed to defendant-appellant.
Affirmed.
NOTES
[1] Angella Blanchard's name appears in the record spelled variously as "Angelle," "Angele," "Angel," and "Angela."
[2] It is admitted by both litigants that this bearing call is erroneous and should read "N 08 4243" East."
[3] Louisiana Civil Code Article 3474 provides:

"Immovables are prescribed for by ten years, when the possessor has been in good faith and held by a just title during that time."
Just title is further defined by Louisiana Civil Code Article 3483, viz.:
"To be able to acquire by the species of prescription mentioned in this paragraph, a legal and transferable title of ownership in the possessor is necessary; that is what is called in law a just title."
[4] Louisiana Civil Code Article 3479 enumerates the four requirements for ten years' acquisitive prescription, viz.

"To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an object which may be acquired by prescription."
[5] See Louisiana Civil Code Article 3487 which reads, in its entirety, as follows:

"To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
"1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
"2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription."