385 So.2d 876 (1980)
Cliff FERGUSON et ux., Plaintiffs-Appellants,
v.
Bobby E. GUNTHER et ux., Defendants-Appellees.
No. 14158.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1980.
Truett West, Farmerville, for plaintiffs-appellants.
Blackwell, Chambliss, Hobbs & Henry, by Larry Arbour, West Monroe, for defendants and appellees.
Before PRICE, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
In this dispute over a 10-foot strip of land, the trial court rejected the demand of plaintiff who had the more ancient title from a common author and upheld defendants' title on a plea of 10-year acquisitive prescription. Plaintiff appeals. We affirm.
Plaintiff and defendants are owners of rural lakefront property which was originally subdivided into lots approximately 100 X 100 feet. Through mesne conveyances from a common author, each litigant has a recorded title to the 10-foot strip. Plaintiff's title to Lot 5 and the east 10 feet of Lot 6 (the strip in dispute) dates from, and was recorded, in 1965. Defendants' title to Lot 6 dates from, and was recorded, in 1968. Plaintiff's action was brought in 1979, more than 10 years after defendants acquired Lot 6.
The common corners of Lots 5 and 6 were marked by iron stakes. Both litigants are in good faith and in corporeal possession of some of the property described in their respective deeds. With the older title from the common ancestor, plaintiff will prevail *877 unless defendants show corporeal possession of the strip sufficient in quality and time to establish title by acquisitive prescription. CC 3479; Clayton v. Langston, 311 So.2d 74 (La.App. 3d Cir. 1975).
The trial court found that the subdivision survey stakes were pointed out to Craighead (defendants' predecessor in title) when he purchased Lot 6 in September 1968 from the common author. Craighead immediately cleared the lot to the lot line and then moved an old house onto the lot for use as a camphouse. Craighead periodically and routinely mowed the lot to the line he had cleared during the six years he owned the lot. Defendants purchased the lot from Craighead in 1974 and have since continued the periodic mowing of the lot and use of the property. Either Craighead or defendants erected a small shed on the 10 foot strip and attached a metal awning to the camphouse. This awning overhangs the 10 foot strip by some unstated distance. In 1977-78 defendants began stacking firewood on the strip for use in the camphouse. Defendants use the shed as a place of storage.
Plaintiff's lot remained uncleared until after he purchased it in December 1977. In August 1978, defendants were advised that plaintiff had the more ancient title to the east 10 feet of Lot 6 and plaintiff's surveyor placed new iron markers at the corners of the strip. Defendants thereafter removed these markers and erected a fence on the east line of Lot 6. Plaintiff's suit followed.
The quality of corporeal possession required to defeat an owner in constructive possession and establish title by acquisitive prescription is neither simple nor precise. The peculiar circumstances and the type of land in dispute will determine resolution of the issue in each particular case. Norton v. Addie, 337 So.2d 432 (La.1976); Liner v. Louisiana Land & Exploration Company, 319 So.2d 766 (La.1975); Dunn v. Pipes, 325 So.2d 349 (La.App. 2d Cir. 1976). See CC Arts. 3478, 3487.
Isolated incidents, such as the occasional mowing of farmland by one who claimed adverse possession but who admitted he sometimes mowed at random without differentiation as to the alleged boundary, is not sufficient to support acquisitive prescription. Authement v. Theriot, 292 So.2d 319 (La.App. 1st Cir. 1974). Even periodic mowing of property is not sufficient when a visible boundary (a ditch) exists and the mowing occurs across the visible boundary. Richard v. Comeaux, 260 So.2d 350 (La.App. 1st Cir. 1972).
On the other hand, periodic mowing of unimproved residential property up to the line where an old fence once stood years before, is sufficient corporeal possession to support acquisitive prescription. Wagley v. Cross, 347 So.2d 859 (La.App. 3d Cir. 1977). The same result was reached in Dunn, supra, where the mowing occurred on improved residential property up to where a fence once stood.
The clearing of Lot 6 in this instance to the lot line projected visibly between the subdivision corner stakes is similar in legal effect to the blazing of a line in the woods, Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952), and to the cutting of timber, Bihm v. Voorhies, 241 So.2d 915 (La.App. 3d Cir. 1970). The continued periodic mowing and the use of the strip by defendants, following the clearing of the lot in 1968, is a continuation of the corporeal possession begun by the 1968 clearing by Craighead. CC Arts. 850, 3442.
Neither the notice to defendants that plaintiff had the more ancient title and the setting of the new survey stakes in 1978, nor the corporeal possession of plaintiff begun in December 1977 on Lot 5, interrupted the acquisitive prescription of the 10-foot strip accruing by reason of defendants' and Craighead's corporeal possession of the strip which began in 1968. Craighead and defendants' enjoyment and use of the strip continued uninterrupted for more than 10 years. When plaintiff brought suit in 1979 acquisitive prescription had accrued. CC 3516-3518. Holiday v. Continental Can Co., Inc., 351 So.2d 181 (La.App. 2d Cir. 1977).
*878 The findings, inferences and conclusions of the trial court are supported by the record. At appellant's cost, judgment is AFFIRMED.