KING, Judge.
The issue presented by this appeal is whether or not the trial court erred in finding that plaintiff had acquired a servitude over a drainage ditch traversing the defendant’s property.
Gravity Drainage District # 2 of the Parish of Vermilion, Louisiana (hereinafter plaintiff), a public corporation formed in 1942 by the Vermilion Parish Police Jury, filed suit against defendant, Joseph Vallee (hereinafter defendant), seeking a permanent injunction to enjoin defendant from preventing plaintiff from entering onto defendant’s property for the purpose of cleaning and maintaining a drainage ditch crossing defendant’s property. Defendant filed a Peremptory Exception Of No Right Of Action which was overruled after a hearing. The defendant then filed an answer and, after a trial on the merits, judgment was rendered in favor of plaintiff granting a permanent injunction against defendant prohibiting him from stopping plaintiff from entering onto his property for cleaning and maintaining a public drainage ditch across his property “provided the activities on the property are not beyond the normal maintenance of the existing natural servitude of drain” and preventing defendant from in any way blocking or interfering with the cleaning and working on this public drainage ditch. The trial court’s decision was based on its finding of fact that plaintiff had acquired a servitude of drain over the ditch on the defendant’s property. From this decision, defendant timely appeals, assigning as error:
(1) The trial court's finding that the ditch across his property is subject to a natural servitude of drain in favor of the plaintiff;
(2) The trial court’s finding that the plaintiff acquired a conventional servi *475 tude over the ditch across his property by thirty year acquisitive prescription;
(3) The trial court’s finding that LSA-R.S. 38:1767, 38:1794 and 38:1804 encompass the right of the plaintiff to take private property from a landowner without just compensation.
For the reasons hereinafter given we affirm the decision of the trial court.
FACTS
Mrs. Marie Louise LeBlanc Vallee inherited property from her father at some time around the year 1945. She later, at some time between 1960 and 1982, donated the property to her son, the defendant, Joseph Vallee. The property (hereinafter sometimes referred to as the defendant’s property) which was inherited by Marie L. Le-Blanc and which is presently owned by the defendant, is described in the trial court judgment as being located in:
“Section 59, Township 12 South, Range 3 East, Vermilion Parish, Louisiana.”
Mrs. Marie Louise LeBlanc Vallee, at the time of trial, lived in North Louisiana and had only been on the defendant’s property occasionally to visit her children. She testified that she only recalls several occasions when she walked on the property and testified at trial that she had never been on the part of the defendant’s property where the drainage ditch was located. Joseph Vallee has never lived on his property. The defendant’s property is partially bordered on the south by Maple Trace Subdivision, an almost completely developed subdivision, and on the southeast comer by a tract of land owned by Donald W. Guidry and Kenneth L. Guidry. The defendant’s property is bordered on the North by a 50 foot reservation for a future road, and is bordered on the East and West by other tracts of land owned by Marie L. LeBlanc.
A rather large coulee or drainage canal, enters the defendant’s property from the east, just north of the southeast comer of the defendant’s property, and crosses through the defendant’s property, curving toward the north, and exits the defendant’s property at its north side approximately midway between its east and west boundaries. This drainage canal (hereinafter referred to as the coulee) carries water which eventually enters into another coulee which ultimately drains into the Vermilion River, which lies to the west of the defendant’s property. Draining into the coulee at the southern end of the defendant’s property are several smaller drainage ditches, one of which is the subject of this litigation. These smaller drainage ditches drain the property south of the defendant’s property. The drainage ditch at issue (hereinafter referred to as the ditch) runs approximately due north and begins south of State Highway 82, which runs east to west several hundred feet south of the defendant’s property, and drains water from ditches in a subdivision located south of Highway 82. From there the ditch goes north under Highway 82 and proceeds north through another subdivision, eventually passing north through the Maple Trace Subdivision, and then enters the defendant’s property from the south, and drains north into the coulee which goes through defendant’s property. The ditch drains surrounding tracts of land which lie both north and south of Highway 82. The ditch serves to drain an estimated total of 26 acres of land. The size of the ditch ranges from 6 feet wide by 3 feet deep at its beginning south of Highway 82 to 10 feet wide by 7 feet deep where the ditch empties into the coulee on defendant’s property. Standing water is found in various pools located along the length of the ditch on the defendant’s property, and plant growth of various kinds and sizes are found along the length of the ditch on the defendant’s property.
The plaintiff filed suit seeking an injunction to prevent defendant from in any way interfering with plaintiff cleaning and maintaining the ditch on the defendant’s property. The plaintiff's petition alleged that the ditch is one which has been in existence for many years and is either a natural drain or one created by a governmental subdivision; that there was a need to improve drainage and prevent flooding that required the plaintiff to clean the ditch; and that plaintiff has attempted to clean the ditch but has been prevented *476 from doing so by the defendant. An Exception Of No Right Of Action filed by defendant was heard and overruled.
At a trial on the merits defendant testified that no right-of-way was ever granted by him to any political subdivision and that no one had ever told him that work had been done on his property to clean or maintain the ditch. Dephnix Meaux, the defendant’s brother-in-law, who lived near the defendant’s property and who used the defendant’s property as pasture, stated that he never granted the plaintiff a right-of-way on behalf of defendant, nor had he ever noticed any cleaning of the ditch since moving near the defendant’s property in 1971. He further testified that he was asked by someone (presumably by employees of either the Vermilion Parish Police Jury or the plaintiff) for permission to clean the ditch in approximately 1983 and that he requested that they contact the defendant. He also testified that he personally stopped a dragline operator from dredging the ditch on the defendant’s property at some time after 1971.
The plaintiff called Robley Roy, a parish employee, who testified that he used a machine known as a “gradall” to clean the ditch for its entire length from its beginning south of Highway 82 to where it drains into the coulee on defendant’s property. Mr. Roy testified that he had used the gradall twice, once around 1975 and once again around 1977, and that he either mowed or supervised the mowing of grass along the ditch once a month, weather permitting, from about 1967 until approximately 1979. He further testified that neither the defendant or any one else had at any time ever objected to either the cleaning or mowing of the ditch.
Savy Harrington, an employee of the plaintiff, testified that he had personally used a dragline to clean the ditch on the defendant's property for approximately thirty-six years, part of which occurred even before Highway 82 was built, and that the ditch on the defendant’s property was dredged by a dragline operated by him approximately every four years until he discontinued dredging the portion of the ditch on defendant’s property at the request of Dephnix Meaux.
POWERS VESTED IN GRAVITY DRAINAGE DISTRICTS
Several Louisiana revised statutes contain the powers granted gravity drainage districts by the Legislature.
LSA-R.S. 38:1767 provides:
“The board of drainage commissioners may open all natural drains which they deem necessary in their respective districts and perform all work connected therewith, which they may deem necessary to make the opening of the natural drains effective. They may cut and open new drains, ditches, and canals wherever deemed necessary. In order to carry out the drainage works, the drainage commissioners may enter into contracts for the performance of these works, or purchase machinery and have the work performed under their supervision, and perform all other acts necessary to fully drain all the land in their districts and maintain the drainage when established.”
LSA-R.S. 38:1794 provides in pertinent part in Subsection C:
“The board of commissioners of the drainage district shall have absolute control over the drainage of the districts or any subdistricts within its limits and may construct all necessary works and make all necessary drains, ditches, and canals for the purpose of gravity drainage thereof. The board of commissioners may adopt all needful regulations necessary to maintain free and unobstructed the flow of water through the gravity canals, ditches, and drains ...”
Subsection D of R.S. 38:1794, which deals with maintenance of canals, drains and ditches within the supervision and control of gravity drainage districts, provides:
“Said board of commissioners of the drainage district may pass all needful regulations necessary to keep the beds and the banks of all canals, drains and ditches under their supervision and control free from underbrush, trees, and weeds so as to properly maintain the *477 drainage through these canals, drains, and ditches.”
LSA-R.S. 38:1804, dealing with the powers of existing gravity drainage districts, provides, in pertinent part, that, in addition to the other powers provided, that gravity drainage districts have the power to:
“(1) Drain lands in said district by the construction, maintenance, and operation of gravity and/or forced drainage facilities, including drains, drainage canals, ditches, pumps, and pumping plants, dikes, levees, and other related works.
******
(6) Cut and open any drains and canals and open, deepen and enlarge natural drains within or without the district and perform all work in connection therewith which may be deemed necessary to provide drainage for the lands in the district, and perform all other acts necessary to drain the land in the district and maintain the drainage when established.”
Gravity drainage districts, under the above cited statutes, may perform whatever acts are necessary in their districts to drain the land and maintain the ditches, including opening natural drains and opening new drains, canals and ditches, and maintain existing drains, canals and ditches by removing underbrush, trees, and weeds found in such drains, canals, and ditches.
UNCONSTITUTIONAL TAKING OF PROPERTY
Although gravity drainage districts, by virtue of the above cited authority, have the power to establish and maintain drainage on land within their respective districts, they may not do so in contravention of Article I, § 4 of the Louisiana Constitution of 1974, which prohibits the taking of property without due process of law. Defendant claims that LSA-R.S. 38:1767, 38:1794, and 38:1804, which encompass the right of a Drainage District to maintain or clean the drainage ditches on property in a Drainage District, permits an unconstitutional taking of defendant’s property, thereby depriving defendant of his property without just compensation. Defendant contends that expropriation proceedings or some other method of acquisition are required before a Drainage District is entitled to enter onto property to maintain or clean a drainage ditch. See Plaquemines Parish Comm’n v. Hero Lands Co., 388 So.2d 790 (La.1980). We agree with defendant that the above cited statutes contained within Title 38 can not grant a Drainage District any rights of ownership over property in the absence of the existence of other property rights which a Drainage District may acquire by purchase, donation, prescription, or expropriation. However, the right to maintain existing drainage for the public good is not the exercise of a right of ownership. Cf. Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981), cert. den., 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). For this reason we find no merit in defendant’s contention that he has been unconstitutionally deprived of his property. We, therefore, examine other possible rights which the plaintiff may now have or which it may have acquired due to the passage of time in connection with the ditch through the defendant’s property.
THE DITCH AS A NATURAL SERVITUDE OF DRAIN '
The trial court found, as stated in its Reasons for Judgment, that the origin of the ditch was unknown, but that water flowed through the ditch into the coulee long before 1954, when Highway 82 was built, and that water flowed naturally through the ditch from adjoining land across the defendant’s property. Our examination of the evidence in the record confirms that the trial court was not manifestly in error in finding that water flowed naturally through the ditch on defendant’s property since at least before 1954.
Mr. Eugene Sellers, an expert in the field of Civil Engineering, testified that the ditch served to drain a total area of approximately 26 acres. He also testified that the ditch served to drain the subdivision located south of Highway 82, where the ditch begins. Finally, we note, by examining the plat in evidence of Maple Trace Subdivision, that the land lying to either side of *478 the ditch in Maple Trace Subdivision is higher in elevation than the ditch itself, that the land for several hundred feet on either side of the ditch in the subdivision drains into the ditch, and that the lots in the subdivision lying to the west of the ditch increase in elevation according to their distance from the ditch. All of these factors taken together constitute evidence from which the trial court could reasonably have concluded that the natural flow of water from adjoining estates was into the ditch and thereafter northward through the ditch across the defendant’s property and eventually into the coulee on the defendant’s property.
LSA-C.C. Art. 655 provides that:
“[A]n estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow.”
The trial judge concluded that the natural drain of water from the approximately 26 acres near defendant’s property was through the ditch located on defendant’s property and, absent manifest error, we will not disturb this finding. Canter v. Koehring Company, 283 So.2d 716 (La. 1973); Poole v. Guste, 246 So.2d 353 (La. App. 1 Cir.1971), aff’d, 261 La. 1110, 262 So.2d 339 (La.1972).
The opening, maintenance and control of natural drains is within the police power of the State, as conferred by legislation on the boards of commissioners of drainage districts. Petit Anse Coteau Drainage Dist. v. Iberia & V.R. Co., 124 La. 502, 50 So. 512 (La.1909). This legislation, however, does not permit a drainage district, without paying just compensation, to enter onto estates and make natural drains more burdensome by increasing the natural flow of the water. Thibodeaux v. Landry, 351 So.2d 522 (La.App. 3 Cir.1977). An owner of land through which a natural servitude passes may not make that servitude more burdensome by obstructing the natural flow of water and may be enjoined from doing so. LSA-C.C. Arts. 655, 656; Terribonne Parish Police Jury v. Matherne, supra.
In order for the plaintiff to enter onto a defendant’s land for purposes of cleaning trees, brush, and weeds from a natural drain located thereon, the plaintiff must either compensate defendant for damage sustained due to the burden imposed on the defendant’s property or have acquired the right to enter onto the defendant’s property by some other means. Parish of East Baton Rouge v. Pourciau, 387 So.2d 645 (La.App. 1 Cir.1980); Thibodeaux v. Landry, supra.
ACQUISITION OF A CONVENTIONAL SERVITUDE
The Drainage District has the ability to acquire a conventional servitude by acquisitive prescription. LSA-C.C. Arts. 699, 742, 3486. See Poole v. Guste, supra; Johnson v. Wills, 220 So.2d 134 (La.App. 3 Cir.1969), writ den., 254 La. 132, 222 So.2d 883 (1969). In order to acquire a conventional servitude of drain by acquisitive prescription, the Drainage District must have retained uninterrupted possession of the ditch publicly, peaceably, and unequivocably for thirty years. LSA-C.C. Art. 3486. See also Yiannapoulos, Creation of Servitudes By Prescription And Destination Of The Owner, 43 La.L.Rev. 57, at page 70 (1982-1983). Since we have determined that the trial court was not manifestly in error in finding a natural servitude of drain, the Drainage Board must have adversely possessed the ditch by acts showing the exercise of their rights granted due to the natural servitude of drain, i.e., they must exercise rights consistent with a conventional servitude.[1]
By the year 1949, the plaintiff had dredged the apparently once-natural ditch, from its beginning south of the present Highway 82, all the way north to where the *479 ditch empties into the coulee on the defendant’s property. Thereafter dredging occurred approximately every four years, until Dephnix Meaux apparently requested that the plaintiff obtain permission from defendant to dredge the portion of the ditch on the defendant’s property. The evidence shows that at least during the years 1967 to 1979 the ditch was mowed once a month, weather permitting. A gra-dall was used to clean the ditch at least twice, once around 1975 and once again around 1979. Dephnix Meaux, who used the defendant’s property for pasture, testified that he worked offshore on a shift of seven days on and seven days off from the time he moved to the area until about 1983. It is therefore entirely possible that the plaintiff cleaned and maintained the ditch on defendant’s property, when Mr. Meaux was working offshore, which could account for the reason Mr. Meaux never noticed any activities involving cleaning or maintenance of the ditch.
After reviewing the evidence contained in the record we find that the trial court was not manifestly in error or clearly wrong in finding that the plaintiff in fact cleaned and maintained the portion of the ditch on the defendant’s property beginning in the year 1949, when dredging of the ditch was begun, to allow for adequate drainage of the land adjacent to the defendant’s property, and that this possession of the ditch .on the defendant’s property continued until at least 1979. Photographs of the ditch, taken shortly before trial, showed that the portion of the ditch on the defendant’s property had become overgrown with weeds, brush, and trees. Eugene Sellers, the Parish Civil Engineer, testified that the ditch on the defendant’s property needed to be cleaned in order for the plaintiff to provide adequate drainage to the area. Testimony adduced at trial, viewed in its entirety, permits a finding that substantial and actual work was performed by the plaintiff on the ditch on the defendant’s property from 1949 until at least 1979. No acts of dominion inconsistent with the plaintiff’s cleaning and maintenance of the ditch occurred during the period between 1949 and at least 1979. LSA-C.C. Arts. 722, 724, 735, 740, 742, and 3421.
This court finds that the trial court did not manifestly err in finding that the plaintiff, acting for itself or through the Parish of Vermilion physically possessed the ditch beginning approximately in 1949 and continuing through at least the year 1979. See Ferguson v. Gunther, 385 So.2d 876 (La.App. 2 Cir.1980). Whether property has been sufficiently possessed depends on the nature of the property. Aymond v. Smith, 476 So.2d 1081 (La.App. 3 Cir.1985). We find from the evidence that the trial court was not manifestly in error in finding that by its acts the plaintiff has acquired, by acquisitive prescription of thirty years, a conventional servitude of drain over the portion of the ditch located on the defendant’s property.
EXTENT OF SERVITUDE AND INJUNCTION
The trial court ordered that the plaintiff be permitted to enter onto the defendant’s property to clean and maintain the ditch “provided the activities on the property are not beyond the normal maintenance of the existing natural servitude of drain.” Having found that the original “natural” drain has been substantially altered due to frequent cleaning and maintenance of the drain by the plaintiff, we must determine what activities of plaintiff would be in keeping with the existing natural servitude of drain.
LSA-C.C. Art. 744 provides that the owner of the dominant estate has the right to make at his expense all the works that are necessary for the use and preservation of the servitude. LSA-C.C. Art. 744. Further, LSA-C.C. Art. 745 provides:
“[T]he owner of the dominant estate has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude. He may deposit materials to be used for the works and the debris that may result, under the obligation of causing the least *480 possible damage and of removing them as soon as possible.”
Savy Harrington, a Drainage District employee, testified that the Drainage District, in order to adequately clean the portion of the ditch on the defendant’s property, will have to excavate it and that it may also be necessary to remove some of the trees growing in the ditch.
Eugene Sellers, the Parish Civil Engineer, testified that the ditch needs to be cleaned and grubbed, meaning that the overgrowth of trees and grass should be removed and that there should also be “mucking” of an accumulation of silt of approximately one foot deep existing in the ditch in some areas. Mr. Sellers testified that the bottom of the ditch could be deepened with a gradall, but that the large trees near the ditch could be worked around and left standing. Accordingly, the judgment of the trial court, insofar as the extent of cleaning and maintenance allowed thereby, was correct in permitting the plaintiff to clean and maintain the ditch in a manner consistent with its conventional servitude of drain.
CONCLUSION
Since this court finds that the trial court did not manifestly err in finding that the ditch was a natural drain, and that the trial court did not manifestly err in finding that the Drainage District acquired a conventional servitude of drain by thirty year acquisitive prescription, defendant is prevented from altering in any way the natural flow of water and from otherwise making the natural servitude of drain more burdensome to owners of the dominant estates. LSA-C.C. Articles 656, 658.
For these reasons, the judgment granting an injunction permitting the plaintiff to clean and maintain the ditch and to facilitate removal of existing silt deposits, trees, bushes, and weeds growing within the ditch is affirmed. All cleaning and maintenance is to be performed in a manner least injurious to defendant’s property. All costs of this appeal are assessed to the defendant-appellant.
AFFIRMED.

. It is acknowledged that the Drainage District might, under certain facts and circumstances, acquire ownership of the land over which the ditch passes. Since, however, the Drainage District is not claiming ownership and only seeks an injunction in order to clean and maintain the portion of the ditch on defendant's property, a finding of a conventional servitude of drain by thirty year acquisitive prescription would be sufficient to grant the Drainage District the relief which they seek and is not inconsistent with their manner of possession.