800 So.2d 18 (2001)
Melissa Lynn TRAHAN
v.
ASPHALT ASSOCIATES, INC. and Transcontinental Insurance Company.
No. 01-0311.
Court of Appeal of Louisiana, Third Circuit.
October 17, 2001.
Rehearing Denied December 5, 2001.
*20 Jack W. Caskey, Lake Charles, LA, Counsel for Plaintiff/Appellant Melissa Lynn Trahan.
Frank M. Walker, Jr., Plauche, Smith & Nieset, Lake Charles, LA, Counsel for Defendants/Appellees Asphalt Associates, Inc. and Transcontinental Insurance Co.
*21 Court composed of ULYSSES GENE THIBODEAUX, SYLVIA R. COOKS, and JOHN D. SAUNDERS, Judges.
COOKS, Judge.
On the night of December 18, 1992, Melissa Lynn Trahan was driving south on Weaver Road in Lake Charles returning from her mother's house to her house. At this time, Weaver Road was being resurfaced. To Ms. Trahan's knowledge, the road had never been closed to traffic at night. A superintendent for Asphalt Associates, who was in charge of the resurfacing project, determined the "sub-base" being applied to Weaver Road required the road to be closed twenty-four hours a day to through traffic. On approximately December 15, 1992, Asphalt Associates began closing Weaver Road to through traffic twenty-four hours a day.
Barricades and various warning signs were placed at the scene to control the flow of traffic. According to Asphalt Associates, they experienced problems with people driving their vehicles around and through the barricades. Therefore, it was decided to position a large tractor with a front end loader and backer to block Weaver Road.
On her way home from her mother's house, Ms. Trahan drove her car into the tractor. It was a foggy night, and Ms. Trahan testified she was driving with her low beams rather than high beams because of the fog. It was estimated Ms. Trahan was driving in excess of the thirty-five mile per hour posted speed limit. Ms. Trahan estimated she was traveling between thirty-five and forty miles per hour. Her expert testified she was traveling between thirty-six and thirty-nine miles per hour. Asphalt Associates' expert estimated Ms. Trahan's speed at forty-four to forty-nine miles per hour. Ms. Trahan told the investigating officer she was distracted by a flashlight to her left as she passed Barbe High School and when she turned back to the road she saw the parked tractor. She immediately slammed on her brakes, but could not avoid sliding into the tractor.
Ms. Trahan stated the tractor was unmarked and unlighted. Asphalt Associates contended that unidentified vandals removed the signs and barricades. It was established at trial that warning signs and barricades were not in place at the time the accident occurred. However, there was evidence produced that Asphalt Associates had placed warning signs and barricades in the area at the conclusion of that day's work. The investigating officer found barricades with the warning lights still flashing upside down in the adjacent ditches. The "Road Closed" signs were found lying face down on the roadway.
Ms. Trahan immediately experienced excruciating pain in her right shoulder, and was transported by ambulance to the hospital. Ms. Trahan eventually underwent two surgeries on her shoulder, and numerous courses of physical therapy. At trial she testified she still suffered from constant pain in her shoulder. Ms. Trahan filed suit for the damages she suffered as a result of the accident.
Trial concluded on May 17, 1996, with the jury allocating eighty (80%) percent of the fault to the unknown persons who removed the barricades and warning signs and ten (10%) percent each to Ms. Trahan and Asphalt Associates. The jury then awarded Ms. Trahan $45,000.00 for her injuries. Ms. Trahan moved for A Judgment Notwithstanding the Verdict (JNOV). In her motion, Ms. Trahan requested Asphalt Associates be apportioned one hundred (100%) percent of the fault and that greater damages be awarded. The trial court on its own motion granted a new trial on the basis that "[t]he Court and the jury `missed the boat' in regard to *22 both instructions to the jury and the amount of damages which should be awarded to the plaintiff."
Asphalt filed writs with this court and the Louisiana Supreme Court arguing the granting of a new trial was clear error. Both writs were denied. Asphalt then filed an Application for Rehearing, Reargument and Reconsideration of Order Granting New Trial, Alternatively, Petition for Nullity of Judgment. This motion was also denied. Asphalt applied for writs, which this court and the Louisiana Supreme Court denied.
A second trial was held in June of 2000. This jury apportioned thirty-nine (39%) percent fault to Ms. Trahan, thirty-one (31%) fault to the unidentified persons, and thirty (30%) percent fault to Asphalt. The jury also awarded the following damages:

Past Medical Expenses $ 29,000
Future Medical Expenses $ 0
Past Lost Wages $ 6,250
Property Damage $ 4,340
General Damage $ 50,410
Total $ 90,000

Ms. Trahan then filed a motion requesting the court require Asphalt to pay all damages, less the 39% portion deducted for her fault in compliance with Pinsonneault v. Merchants & Farmer's Bank and Trust Co., 99-12 (La.App. 3 Cir. 7/21/99); 738 So.2d 172, writ granted and remanded, 99-2681 (La.2/4/00); 753 So.2d 842; on remand, 99-0012 (La.App. 3 Cir. 6/27/01); 789 So.2d 762. The trial court denied the motion.
Ms. Trahan appealed the jury verdict, asserting the following assignments of error:
1. The jury's apportionment of fault was a clear abuse of its discretion. Fault should have been assessed 100 % to Asphalt Associates.
2. The jury erred in failing to award her the stipulated medicals, including Dr. Kober's medicals for thoracic outlet syndrome.
3. The jury's verdict of $50,000 for pain and suffering was grossly inadequate.
4. The trial judge erred in denying her Motion for Judge to Assess Damages.
Asphalt answered the appeal seeking reinstatement of the original jury verdict and a reallocation of court costs, proportioned to the fault assigned.

ASSESSMENT OF FAULT
As noted, the jury apportioned thirty-nine (39%) percent fault to Ms. Trahan, thirty-one (31%) fault to the unidentified persons, and thirty (30%) percent fault to Asphalt.

I. Fault of Melissa Lynn Trahan.
The record supports the jury's finding that Ms. Trahan was partly at fault. It was established at trial the visibility on the evening of the accident was poor due to fog. Ms. Trahan stated in her deposition that the fog was "slight to medium" and at trial testified the weather was "slightly foggy." She noted the fog was thick enough that she could see better with her low beams than her high beams.
Ms. Trahan's brother, Stuart Trahan, video taped the scene on the night of the accident. He described the conditions as follows:
It was foggy. I think I made mention during the video. The video doesn't quite depict the thickness of the fogginess. In my opinion it wasrather foggy, well, it was a cold December night with a thick fog. I don't know how else to explain it.
*23 Ms. Trahan's expert, Teddy Hirsch, also noted that "it was foggy and drizzly or misty, kind of poor visibility."
In Avery v. Commercial Union Ins. Co., 621 So.2d 184, 191 (La.App. 3 Cir.1993), this court explained:
It is well settled that when visibility is impaired by smoke, fog, or other unfavorable atmospheric conditions, a motorist must exercise care in the operation of his vehicle commensurate with the danger created by the conditions. He must reduce his speed and maintain a close lookout. As an extreme measure, when visibility is destroyed or greatly obscured, he must stop his vehicle until conditions permit him to resume travel in reasonable safety. A motorist does not have the right to assume that his course of travel is free from danger or obstruction in the absence of his ability to see clearly ahead. If he continues to travel as if he knew there was perfect clearance ahead, he does so at his own risk and peril.
Ms. Trahan was driving in excess of the thirty-five miles per hour posted speed limit. There is, however, some question as to how much in excess of the speed limit she was traveling. Ms. Trahan testified her speed was between thirty-five and forty miles per hour.
In addition to driving in excess of the speed limit, Ms. Trahan told the investigating officer she was distracted by a flashlight to her left as she passed Barbe High School. She momentarily turned her head, and when she looked back to the road she saw the parked tractor. Despite immediately applying her brakes she was unable to avoid hitting the tractor. Ms. Trahan admitted she was aware that Weaver Road was undergoing construction, and had been closed "on and off" during the month before the accident.
The record established, despite the fact that visibility was poor and Ms. Trahan knew she was traveling on a road that was undergoing construction, she was driving in excess of the posted speed limit. She also was distracted by something and took her eyes off the road. Both experts agreed the impact speed was between 11 and 14 miles per hour, and Ms. Trahan only needed approximately another nine and one-half feet to bring her vehicle to a complete stop. We cannot say the jury manifestly erred in finding Ms. Trahan at fault.

II. Fault of Unknown Third Parties.
It also was established at trial there were no warning signs and/or barricades in place when Ms. Trahan struck the tractor. Thus, only two possibilities remained: (1) Asphalt Associates failed to properly place the signs and/or barricades at the end of the work day; or (2) they were removed by third parties. The jury concluded third parties were responsible for the signs' removal. Ms. Trahan does not dispute this finding, but argues Asphalt should be held responsible for these acts.
The jury was reasonable in concluding the actions of the unknown parties in removing the signs was a factor in the accident. The question before us is whether those third party acts can be impugned to Asphalt Associates.
Ms. Trahan argues Asphalt Associates should not escape its responsibility by arguing some unknown third party removed the signs. She contends Asphalt was required to properly place warning signs in the area and maintain them even if it required hiring a night watchman.
There is generally no duty to protect others from the criminal activities of third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). This duty only arises under limited circumstances, *24 when the criminal act in question was reasonably foreseeable. Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99); 752 So.2d 762, 768. The trial court followed this law in its instructions to the jury.
In Posecai, 752 So.2d at 768, the supreme court adopted a balancing test as the best method of determining foreseeability, stating:
The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
(Emphasis ours.)
There was no evidence presented that Asphalt was aware of any previous incident on a project where person[s] had caused an accident by removing all signs when a road was closed. Further, even Ms. Trahan's expert admitted the warning signs and barricades placed by Asphalt were appropriate. Ms. Trahan also testified had the signs been in place, the accident would not have occurred. Therefore, we find the record does not support the conclusion that Asphalt should have reasonably foreseen this accident was likely to occur, given the precautions (the appropriate placement of signs and barricades) it had taken. Therefore, Asphalt cannot be held responsible for the acts of the unknown third parties.

III. Fault of Asphalt Associates.
Ms. Trahan contends Asphalt created the dangerous situation by leaving the tractor on the roadway. Her expert, Mr. Hirsch, testified all appropriate regulations absolutely prohibit the placement of equipment in the roadway. In support of this argument, Ms. Trahan introduced the following AASHTO document, which stated:
The contract specifications or traffic control plans should require, except in extenuating circumstances, the removal of contractor equipment completely off the roadways ... at night, on weekends and whenever equipment is not in operation. In those instances where such removal is not feasible, appropriate signing, lighting, barricades, barriers and similar devices to protect the motorist from collision with the equipment should be specified.
(Emphasis ours.)
Asphalt argues in brief the jury found extenuating circumstances existed in this case to place the tractor in the roadway. As discussed earlier the fault of the third parties cannot be impugned to Asphalt. Even Ms. Trahan's expert admitted the signs and barricades, if not removed were appropriate. The only fault which the jury could reasonably assign to Asphalt was the placement of the unmarked and unlighted tractor on the road. This finding was not erroneous.

IV. Apportionment of Fault.
Having concluded the jury correctly found all three parties were at fault, we must determine next if the jury correctly allocated the percentages of fault to each under our comparative fault system. In apportioning fault, the trier of fact must consider both the nature of the conduct of *25 each party at fault and the extent of the causal relation between the conduct and the damages claimed. Campbell v. Lousiana DOTD, 94-1052 (La.1/17/95); 648 So.2d 898; Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985).
After considering the fault of the parties in causing Ms. Trahan's harm, we find Asphalt has a greater degree of fault. Ms. Trahan's and the third party's conduct set the accident in motion, and the jury concluded the presence of the tractor caused the resulting harm. This factual finding is not clearly wrong. However, the jury's allocation of fault between the three participants was clearly wrong. Once the jury found the placing of the unlighted and unmarked tractor in the middle of the road was negligent and this negligence contributed to the harm, Asphalt's assessment of fault should have been in relation to the injury sustained rather than the cause of the accident. The record evidence convinces us that Asphalt's fault was substantially greater than either of the other two parties in causing Ms. Trahan's injuries. The injuries she sustained would not have occurred or would have been reduced significantly if the tractor was not placed in the middle of the road. See Campbell, 648 So.2d 898, and Boutte v.. Nissan Motor Corp., 94-1470 (La.App. 3 Cir. 9/13/95); 663 So.2d 154. Therefore, we amend the judgment to increase Asphalt's liability to 60%, reduce Ms. Trahan's liability to 20% and reduce the liability of the unidentified third parties to 20%.

DAMAGES

I. Medical Expenses.
The parties stipulated Ms. Trahan's total medical bills were $43,923.59, but explained it was the jury's responsibility to determine which medical expenses were related to the accident. Asphalt asserts the medical bills related to Ms. Trahan's thoracic outlet syndrome (hereafter TOS) were not caused by the accident. The medicals not related to the TOS equaled $29,000, which was the award rendered by the jury. Ms. Trahan argues she was entitled to an award for the additional medical expenses she incurred which were associated with the TOS.
After a thorough review of the record, we find the jury's award was supported by the record. Dr. Samuel Kober treated Ms. Trahan for TOS. Ms. Trahan states in brief Dr. Kober verified the causal connection between the accident and TOS. However, Dr. Kober admitted his conclusion was based on the history given to him by Ms. Trahan. Further, Dr. Kober testified he assumed Ms. Trahan's TOS complaints started within six weeks of the accident. The record established Ms. Trahan did not complain of TOS until nearly four years after the accident. Scott Duplechin, a physical therapist, who first worked with Ms. Trahan on May 29, 1997, testified she told him her problems began "a few months ago when she was holding on to her nephew."
Ms. Trahan attempted to argue her shoulder injury masked the TOS symptoms. However, the record revealed after the accident but prior to her complaints of TOS, Ms. Trahan performed a job that required heavy lifting. It was also established, during this interval, Ms. Trahan engaged in such activities as hunting and fishing, and was not taking pain medication. We cannot say the jury erred in finding Ms. Trahan's TOS was not caused by the accident.

II. General Damages.
Ms. Trahan argues the jury's award of $50,410 for general damages is inadequate. She asks that we increase the award to $300,000. The discretion vested *26 in the trier of fact in awarding general damages is great, and even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). It is only when the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances of a case that the appellate court should increase or reduce the award. Id.
Although Ms. Trahan cites a number of cases where plaintiffs were awarded more for similar injuries, Asphalt was able to point to cases where plaintiffs were awarded comparable or lesser awards of general damages for similar injuries. In any event, the use of a scale of prior awards in cases with similar injuries to determine whether the trier of fact abused its discretion is looked on with disapproval. Reck v. Stevens, 373 So.2d 498 (La.1979). We have reviewed the record in its entirety, and find the jury did not abuse its vast discretion when it awarded Ms. Trahan $50,000 in general damages. The award is not, in either direction, beyond that which a reasonable trier of fact could have assessed for the effects of these particular injuries to this particular plaintiff under these particular circumstances. Accordingly, the judgment of the trial court is affirmed.

III. Motion For Judge To Assess Damages.
In response to the jury verdict, Ms. Trahan filed a Motion for Judge to Assess Damages, asking the trial court to assess Asphalt with all damages and fault not attributable to her in compliance with this court's opinion in Pinsonneault v. Merchants & Farmers Bank & Trust Co., 738 So.2d 172. Essentially, Ms. Trahan argues the jury should not have been allowed to allocate responsibility for this accident to the unknown third parties.
Pinsonneault is factually distinguishable from the present case. The jury here considered the evidence and circumstances and concluded Asphalt had no duty to post security to watch for the removal of the signs and barricades. In Pinsonneault, the business in question was a bank which "invites the public to bring in and take out money, and where the risk of robbery [was] foreseeable due to previous robberies ..." We also noted the bank in Pinsonneault was located in the second highest crime area in Vernon Parish.
Further, Ms. Trahan did not object in either trial to interrogatories allowing the jury to assign fault to the unknown third parties. Therefore, we do not find the trial court erred in denying her Motion.
At oral argument, the parties were asked whom should be responsible for the percentage of fault assessed to the unknown third parties, who both parties acknowledged were intentional tortfeasors. Counsel for Asphalt candidly stated he felt the ratio approach adopted by Gauthier v. O'Brien, 618 So.2d 825 (La.1993), would be a fair method. The ratio technique is a judge made innovation designed to make up for some of the unfairness caused by the quantification of a fully immune employer's fault in an employee's action against a third party tortfeasor.[1]
*27 We recognize the Gauthier ratio approach has not been extended outside of the worker's compensation-statutory immunity setting. However, one commentator has suggested that the ratio approach adopted in Gauthier, for the employer-employee-third party tortfeasor setting, should likewise be adopted for the phantom tortfeasor setting. D. Robertson, Solidary Liability in Tort: Understanding Gauthier and Touchard, Who Pays How Much?, Part 2, 41 La.Bar J. 334, 335 (1993) (suggesting "[t]here is no good reason not to use the ratio approach so as to treat all phantom tort-feasors the same way"). Such an opinion has not been shared by everyone. See, Veazey v. Elmwood Plantation Associates, Ltd., 93-2818 (La.11/30/94); 650 So.2d 712 (opinion of Hall, Justice, dissenting).
We find the ratio approach effective in situations where there are both intentional and non-intentional tortfeasors. Because La.Civ.Code art. 2323(C) provides a plaintiffs claim for recovery of damages cannot be reduced because of the fault of an intentional tortfeasor, we reapportion the 20% fault of the unknown intentional torfeasors between Ms. Trahan and Asphalt. Under the ratio approach, the fault of Asphalt becomes 60/80 or 75%; the fault of Ms. Trahan becomes 20/80 or 25%. We will amend the judgment accordingly.

ASPHALT'S ASSIGNMENTS OF ERROR
Asphalt answered the appeal and argues the original jury verdict should be reinstated as there was no basis for the second trial. Ms. Trahan argues, because this court and the Louisiana Supreme Court denied writs on this issue, it is now the law of the case and Asphalt is prohibited from rearguing the same issue.
An appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Asphalt notes this doctrine is not applicable where the prior decision was palpably erroneous or where, if the law of the case were applied, manifest injustice would result. Willett v. Premier Bank, 97-187 (La. App. 3 Cir. 6/4/97); 696 So.2d 196, citing Sharkey v. Sterling Drug, Inc., 600 So.2d 701 (La.App. 1 Cir.), writs denied, 605 So.2d 1099 (La.1992).
After a review of the record, we find this court's and the Louisiana Supreme Court's prior rulings in granting the new trial were not palpably erroneous and will not result in a manifest injustice. This assignment of error is without merit.
Asphalt also contends the trial court erred in assessing it all costs of court. Asphalt asks this court to split the court costs evenly between it and Ms. Trahan.
A trial court is given great discretion in taxing court costs in any manner it deems equitable. La.Code Civ.P. art. 1920. It is the general rule that a party cast in judgment is taxed with the costs of the proceedings. However, the trial court may assess costs in any equitable manner and its assessment will not be reversed on appeal in the absence of an abuse of discretion. Este' v. State Farm Ins. Co., 96-99 (La.App. 3 Cir. 7/10/96); 676 So.2d 850.
Although Ms. Trahan was found at fault, we cannot say the trial court abused its discretion in taxing Asphalt with all of the costs. Ms. Trahan's suit has resulted in a *28 recovery in her favor based on a substantial assessment of fault against two other parties, including Asphalt. Under these circumstances we find no abuse of discretion in the trial court's allocation of all costs against Asphalt. See Ritchie v. S.S. Kresge Co., Inc., 505 So.2d 831 (La.App. 2 Cir.), writ denied, 507 So.2d 227 (La.1987).

DECREE
For the foregoing reasons, the judgment of the lower court is amended to apportion 60% fault to Asphalt Associates, 20% fault to Melissa Lynn Trahan and 20% fault to the unknown intentional tortfeasors. As stated in the opinion, the 20% fault of the unknown intentional tortfeasors is assessed under the ratio approach to render the fault of Asphalt 60/80 or 75%; the fault of Ms. Trahan becomes 20/80 or 25%. The opinion is affirmed in all other respects. Costs of this appeal are assessed to Asphalt Associates.
AFFIRMED, AS AMENDED.
THIBODEAUX, J., concurs in part and dissents in part and assigns written reasons.
THIBODEAUX, J., concurring in part and dissenting in part.
I concur in all respects with the majority opinion but the affirmance of the award of general damages. In my view, the jury abused its discretion in awarding only $50,410.00 for the injuries sustained by Ms. Trahan. I would raise the amount of general damages to the lowest reasonable amount which the jury could award, $150,000.00.
NOTES
[1] For further discussion of the ratio approach see Robertson, Solidary Liability in Tort Understanding Gauthier and Touchard, Louisiana Bar Journal, Oct. 1993, at 227. The following example is taken from this article:

[S]uppose that the plaintiff's fault is assessed at 10 percent, the defendant's at 40 percent and the statutorily immune employer's at 50 percent. Under the ratio approach, the plaintiff's and defendant's relative degrees of fault become controlling. When the fault of those parties is compared, we see that plaintiff's fault is 10/50ths (20 percent) and the defendant's is 40/50ths (80 percent). Plaintiff is thus entitled to recover 80 percent of her damages from the defendant.
Id. at 228-29.