STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-175


COULEE KINNEY DRAINAGE DISTRICT

VERSUS

PIERRE W. BROUSSARD


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 81362-J
HONORABLE KRISTIAN D. EARLES
DISTRICT COURT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and James T. Genovese, Judges.

AFFIRMED.

Cooks, J. dissents and assigns written reasons.

James J. Davidson, III
Davidson, Meaux, Sonnier & McElligott
Post Office Drawer 2908
Lafayette, Louisiana 70502
(337) 237-1660
COUNSEL FOR DEFENDANT/APPELLANT:
    Pierre W. Broussard

**Paul G. Moresi, III**
**Assistant District Attorney**
**Post Office Box 1140**
**Abbeville, Louisiana 70511-1140**
**(337) 898-0111**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Coulee Kinney Drainage District**

**GENOVESE, JUDGE.**

In this suit for declaratory judgment, the trial court rendered judgment in favor of Plaintiff, the Coulee Kinney Drainage District (Drainage District), finding that the drainage ditch which traversed the property of the Defendant, Pierre Broussard (Mr. Broussard), was a natural drainage ditch subject to the authority of the Drainage District for cleaning and maintenance. For the following reasons, we affirm.

## FACTS

The drainage ditch at issue in the present litigation forms the northern boundary line of property owned by Mr. Broussard. Due to the nature and location of the work to be performed, the Drainage District needed access over Mr. Broussard's property for the cleaning and maintenance of the ditch. When Mr. Broussard denied access to the Drainage District, the Drainage District filed suit for a declaratory judgment.

Following a trial on the merits, the trial court found that the drainage ditch at issue was a natural drain which the Drainage District had the authority to clean and maintain. The trial court, in addition to rendering judgment in favor of the Drainage District, imposed specific restrictions on how the work was to be performed by the Drainage District[1] in a manner least invasive and least injurious to Mr. Broussard's property. The trial court also cast Mr. Broussard with all costs of court, including the expert witness fee of Plaintiff's expert, which was fixed at $1,000.00. Mr. Broussard appeals.

## ISSUES

The issues raised by Mr. Broussard in this appeal are summarized as follows:

---

[1]The restrictions imposed by the trial court on the manner in which the work was to be performed by the Drainage District are not at issue in the present appeal.

1.     whether the trial court committed error in finding that the drainage ditch in question was a natural drain;

2.     whether the trial court committed error in casting Mr. Broussard with the obligation to pay the expert fees of Elizabeth Girouard; and

3.     whether the trial court erred in failing to award Mr. Broussard compensation for the Drainage District's use of the construction servitude.

## LAW AND DISCUSSION

The statutory provisions governing drainage districts are contained in Title 38 of the Louisiana Revised Statutes. These provisions include La.R.S. 38:1764 which provides, in relevant part, that the Drainage District shall have the power "to plan, construct, maintain and operate such works of improvement as land treatment for watershed protection, flood prevention works, irrigation improvements, recreation, municipal and industrial water storage, and fish and wildlife developments." The authority granted by statute and the works therein authorized may be exercised by the Drainage District "so long as they inure to the direct benefit of the district and the inhabitants thereof . . . for the purpose of securing a proper outlet for the waters of the district or sub-drainage district they represent. . . ." Louisiana Revised Statutes 38:1804 grants additional authority to the Drainage District to "[d]rain lands in said district by the construction, maintenance, and operation of gravity and/or forced drainage facilities, including drains, drainage canals, ditches, pumps, and pumping plants, dikes, levees, and other related works" and to "[c]ut and open any drains and canals and open, deepen and enlarge natural drains within or without the district and perform all work in connection therewith which may be deemed necessary to provide drainage for the lands in the district, and perform all other acts necessary to drain the land in the district and maintain the drainage when established." Finally, La.R.S.

2

38:113 provides that the Drainage District "shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals. . . . " This authority is granted to the Drainage District "whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals. . . . "

In the instant matter, Mr. Broussard complains that the trial court erred in its determination that the drainage ditch at issue is a natural drain. This finding of fact by the trial court may not be set aside on appeal absent manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Stobart v. State, through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Absent manifest error, application of the foregoing statutory authority to the trial court's factual determination yields the inevitable conclusion that the Drainage District possesses the statutory authority to clean and maintain the ditch at issue, which includes the authority to enter Mr. Broussard's property contiguous thereto.

John Carroll Duhon (Mr. Duhon), a member of the Vermilion Parish Police Jury, whose district encompasses the ditch at issue, testified that the ditch runs from the ditch along Kirk Road westward to an arm of Coulee Ilse des Cannes. This ditch has historically had drainage problems. According to Mr. Duhon, in response to complaints in 1997 or 1998, the policy jury cleaned out culverts and the ditch paralleling the roadway, and also dug the ditches which connect the ditch along Kirk Road to the Coulee Ilse Des Cannes in an effort to improve drainage in that area. Mr.

3

Duhon also testified that work had been done to clear the ditch between Kirk Road and a cattle guard located west thereof, fifty to seventy-five feet onto Mr. Broussard's property. Mr. Duhon also explained the presence of a "dry ramp," a crest or high point located along Kirk Road, on the west and north of Mr. Broussard's property. Mr. Duhon testified that because of this dry ramp the water naturally drains south toward Mr. Broussard's property.

Victor Hebert (Mr. Hebert) lives on the east side of Kirk Road, north of Mr. Broussard's property. He testified that "years ago[,]" before he owned his present property, the ditch had been dug to facilitate drainage. Mr. Hebert testified that the ditch on Mr. Broussard's property extends to an unnamed drainage system which has been in existence since he was a child. According to Mr. Hebert, the ditch on Mr. Broussard's property drains the road ditches along Kirk Road. Finally, Mr. Hebert testified that the ditch at issue has been there for as long as he can remember and that it is the only way for the water to drain.

John K. Andrus (Mr. Andrus), the President of the Drainage District, testified that the Drainage District retained Elizabeth Girouard (Ms. Girouard), a civil engineer, to survey the area and to verify that the water that was coming off Kirk Road and the adjacent properties did require the ditch at issue to reach Coulee Ilse des Cannes. Ms. Girouard prepared a drainage study which was presented to the board.

Expert testimony was given by Ms. Girouard, who testified that she investigated the drainage in the area of the ditch at issue and that her purpose was "to determine where the flow was going and where it was headed." Ms. Girouard visited the location, studied a quadrangle map,[2] and viewed aerial photographs of the area.

---

[2] According to Ms. Girouard, a quadrangle map is "a geodetic survey of the area that shows topography, as far as for roads, streams, [and] contours."

She testified that the ditch at issue was present at least since 1955 and "was indicated as a contour to the natural ground" on the quadrangle map. Moreover, according to Ms. Girouard, the ditch at issue is a natural "outfall ditch" which she defined as "a ditch where the surrounding area drains to, to carry water to the ultimate receiving stream." She explained that this ditch "receives water from the high points to the north and south of the entry, of the beginning of the ditch at Kirk Road [ . . . including ] anything that falls into the roadway ditches along Kirk Road from each high point on the north and south." The waters are then deposited via this ditch "into that branch of Coulee Ilse des Cannes to the south of the coulee." Based upon the aerial photographs of the subject property, Ms. Girouard was of the opinion that this drainage scheme had been there for "forty (40) plus years." It was her uncontroverted expert testimony that the ditch at issue is a natural outfall ditch that is part of the natural drainage scheme of the surrounding area which drains the road ditches of Kirk Road and the surrounding area.

Based upon the foregoing, we find that the evidence in the record clearly establishes that the drainage ditch at issue is a natural drain which forms part of the natural drainage scheme in the geographical area which has been in existence for decades. Thus, the factual findings of the trial court that the drainage ditch at issue is a natural drain and that the Drainage District has the authority to clean and maintain same are not manifestly erroneous.

Mr. Broussard also complains that the trial court erroneously cast him with the costs associated with the expert witness, Ms. Girouard. We disagree.

> A trial court is given great discretion in taxing court costs in any manner it deems equitable. La.Code Civ.P. art. 1920. It is the general rule that a party cast in judgment is taxed with the costs of the proceedings. However, the trial court may assess costs in any equitable manner and

5

its assessment will not be reversed on appeal in the absence of an abuse of discretion. *Este´ v. State Farm Ins. Co.*, 96-99 (La.App. 3 Cir. 7/10/96); 676 So.2d 850.

*Trahan v. Asphalt Associates, Inc.*, 01-311, p. 13 (La.App. 3 Cir. 10/17/01), 800 So.2d 18, 27.

In this suit for a declaratory judgment, the Drainage District prevailed. Under these circumstances, we find no abuse of discretion in the trial court's assessment of the costs of court against Mr. Broussard, including the $1,000.00 expert witness fee fixed by the trial court for Plaintiff's expert, Ms. Girouard.

Mr. Broussard also complains on appeal that the trial court erred in failing to award him compensation for the use of a construction servitude by the Drainage District. We note that La.R.S. 39:113 grants the Drainage District a legal servitude for the use of one hundred feet in order to perform the necessary maintenance. We further note that the record is void of any evidence to support the allegation that Mr. Broussard was damaged, or the amount of any damages alleged. Therefore, we find this contention to be without merit.

## **DECREE**

For the foregoing reasons, we affirm the judgment of the trial court finding that the drainage ditch located on the property of Pierre Broussard is a natural drain and that the Coulee Kinney Drainage District has the authority to clean and maintain same. We likewise affirm that portion of the trial court judgment casting Pierre Broussard with the costs associated with the expert witness fee of Elizabeth Girouard set at $1,000.00. Finally, we also affirm the judgment of the trial court denying Pierre Broussard compensation for the use of the legal servitude by the Coulee Kinney Drainage District.

Costs of this appeal are assessed against Pierre W. Broussard.

**AFFIRMED**.

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-175

COULEE KINNEY DRAINAGE DISTRICT

VERSUS

PIERRE W. BROUSSARD

**COOKS, J., dissents.**

This case involves a balancing of the rights of a landowner to the peaceful possession of his property and the right of a Drainage District to provide a system of effective drainage control for the common good. The Coulee Kinney Drainage District filed suit for declaratory judgment against landowner, Pierre Broussard, asserting its right to clean and maintain a drainage ditch traversing the boundary of Mr. Broussard's property. Mr. Broussard's property falls within the drainage district and the cleaning and dredging of his ditch is part of a larger scheme of providing drainage to the entire area. The issue presented in this case has been extensively litigated as far back as 1848 *( See Landry v. McCall*, 3 La.Ann. 134 (La. 1848) and the jurisprudence in this area of the law is well settled.

The majority opinion correctly cites the provisions of Title 38, which delineate the rights of a Drainage District, the most onerous of which is Section 113; however, it fails to place these provisions in the larger context of Civil Code articles on servitude and the jurisprudence *which places limits* on the rights of a Drainage District to enter upon the property of a landowner.

The majority opinion finds based on the testimony: (1) the ditch on Mr. Broussard's property provides a natural drain; (2) his property falls within the Drainage District; and, therefore, (3) the Drainage District under Title 38 has the right

1

to enter upon his property, up to 100 feet on each side of the ditch under Section 113, *without just compensation* to clean and maintain the ditch for the common good. Interpreting Title 38 in such a sweeping fashion has never been done in Louisiana and adopting the reasoning of the majority opinion would be a drastic departure from the jurisprudence in this area and contrary to constitutional provisions.

The Civil Code provides for a three kinds of servitudes, each with its own restrictions - natural, legal, and voluntary or conventional. Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or conventional servitudes are established by juridical act or prescription. La.Civ.Code art. 654. A natural servitude of drainage arises when an estate, situated below, is bound to receive the surface waters that flow naturally from a estate situated above. La.Civ.Code art. 655. "The owner of the servient estate may not do anything to prevent the flow of water and the owner of the dominant estate may not do anything to render the servitude more burdensome." La.Civ.Code art. 656. However, even when there exists a natural servitude of drain, the jurisprudence places limitations on the rights of the owner of the dominant estate. As between neighbors, if the flow of water is impeded due to naturally occurring forces, such as the growth of trees or underbrush, the owner of the dominant estate cannot enter the land of his neighbor to clean out the obstruction without first obtaining a voluntary or conventional servitude. Compensation will be necessary to obtain a conventional servitude. *Landry v. McCall*, 3 La.Ann. 134 (La. 1848); *Thibodeaux v. Landry* 351 So.2d 522 (La.App. 3 Cir. 1977).

This rule applies to public bodies as well. *Whipp v. Bayou Plaquemine Brule Drainage Board*, 476 So.2d 1042 (La.App. 3 Cir. 1985). Absent a showing that the public body has a legal or conventional servitude, the courts do not allow entry onto

2

private property *without just compensation.* In other words, in this case, the Coulee Kinney Drainage District can obtain a legal servitude to use, clean and maintain Mr. Broussard's natural drainage ditch, but they must pay him for the servitude. This well established principle allows a public body to move forward with improving drainage for the common good without trampling on the rights of an individual to the peaceful possession of his property.

This circuit's case of *Whipp v. Bayou Plaquemine Brule Drainage Board* provides an scholarly review of the law in this area. The *Whipp* case involved two canals (actually ditches) - the Whipp Canal and the Boone Canal. The issue presented was whether the Drainage Board had statutory jurisdiction to enter onto plaintiffs' land for restoration and/or excavation of the two connecting ditches. A resolution of the issue turned upon the interpretation of the provisions found in Title 38. Citing La.R.S. 38:113 the court held this provision "grants to the Drainage Board a legal servitude over drainage channels within its district. *Certain prerequisites are essential before the Drainage Board can take advantage of the servitude.*" *Whipp* at 1044 (emphasis added). The first prerequisite is that the drainage channel must have been either previously improved by the drainage district or adopted without prior improvement as a necessary part of or extension to improved drainage channels. This court defined what is necessary for a district to "adopt" a ditch.

> To adopt a canal as part of or an extension to an improved drainage channel the drainage district must obtain a right of way either by expropriation or by purchase. *Terrebonne Parish Police Jury v. Matherne,* 405 So.2d 314, 317 (La. 1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982)(the legislature does not have the constitutional power to authorize either the taking or the damaging of private property without due process of law); *see also Grimble v. Rapides Parish Police Jury*, 322 So.2d 835, 837 (La.App. 3rd Cir. 1975) (Police Jury excavated new canal while under an inaccurate but good faith belief that it had a valid right of way. The trial court held the Police Jury liable for damages.); LSA-R.S. 38:1764 (statutory authority granting Drainage Board power to either obtain or purchase a right of

3

way).

*Id.* at 1046.

This court found with regard to the Boone Canal the Drainage Board admitted it had no right of way. "Therefore, with respect to the Boone Canal, defendants failed to prove the first prerequisite necessary for a Section 113 legal servitude." The court stated:

> The Boone canal was selected during the recent drainage project as a necessary part of the over-all drainage plan. The Section 113 legal servitude would extend to the Boone Canal if it was *adopted* as a necessary part of or extension to the improved drainage channel L-30. However, the Board failed to adopt the Boone Canal because they failed to obtain or purchase a right of way from the landowners. The result is that defendants did not acquire a Section 113 legal servitude over the Boone Canal and, as to their presence along that canal, they damaged private property without just compensation and without due process of law.

This court found it did not matter that the Boone Canal was a natural or artificial drainage ditch. The Board had to acquire a right-of-way by compensating the landowner. With regard to the Whipp Canal, the court allowed the Drainage District to enter the property to clean and maintain the ditch because the District had acquired a conventional servitude by 30 year acquisitive prescription.

In this case, we need not resolve whether this is a natural or artificial drainage ditch. Even if the ditch is found to be part of the natural drainage, as the trial court concluded from the expert testimony, the Drainage District cannot enter the property to clean the ditch without just compensation. It is in no better position than the dominant landowner who cannot enter the property by relying on the Civil Code articles.

The majority apparently believes an owner's right to claim compensation is dependent on there being "damage to the property." The owner is entitled to compensation for the "right-of-way" required to access the natural drain whether his

4

property is damaged by the drainage activities or not!  La.R.S. 38:1804 which grants a gravity drainage district the right to "[c]ut and open any drains and canals and open, deepen and enlarge natural drains" is contingent upon the District first obtaining a "right-of-way" from the landowner.  This has not occurred in this case.  Reading the provisions in Title 38, particularly Section 113, literally and without reference to limitations provided under the constitution and the jurisprudence would lead to absurd results.  For example, Section 113 allows a Drainage District access "for a space of 100feet on both sides" of the ditch "and 100 feet continuing outward from the mouth" for excavation and cleaning.  It is a fact that substantial residential neighborhoods and thriving businesses are built around and up to existing public channels and natural drainage ditches.  Were we to read this provision literally, even an ordinary drainage ditch or coulee bordering a residential lot would not escape the reach of Section 113 and the landowner's morning cup of coffee at the breakfast table might have to yield to the presence of bulldozers on the 100 easement.  This is why in the exercise of the legal servitude under Title 38 the District is only allowed to "perform ordinary maintenance necessary" and to use only that portion of the land which is essential, and no more,  to keep the public ditches clear and in good working order. *Terrebonne Parish Police Jury v. Matherne*, 405 So.2d 314, 317(La. 1981).

The Drainage District, however, is not without recourse under the law.  Section 113 gives the Drainage District the right to perfect a legal servitude on natural drains in the district for use as part of it drainage system.  Because the Coulee Kinney Drainage District has not perfected a legal servitude in this case, it did not fulfill the first essential prerequisite - payment of compensation to the landowner - as required in the *Whipp* case.  Mr. Broussard position is exactly in keeping with his

5

constitutional right to demand just compensation and a restriction on the Drainage District's invasion of his property rights consistent the statute and jurisprudence on expropriation of a servitude. I submit, the provisions found in Title 38, including Section 113, cannot be read without reference to the constitutional provisions on expropriation and the jurisprudence which places limits on the authority of the State to infringe on property rights. To read these provision in the fashion proposed by the majority opinion would amount to an unconstitutional infringement. *See Terrebonne Parish Police Jury v. Matherne*, 405 So.2d 314, 317 (La. 1981), which held Section 113 "does not authorize the taking or damaging of private property without just compensation or without due process of law; nor do we think the legislature could do so constitutionally." *See also Gravity Drainage District v. Vallee*, 512 So.2d 473 (La.App. 3 Cir. 1987) another case from this circuit which recognized the police power of the State to open, maintain and control natural drains but held "[t]his legislation, however, does not permit a drainage district without paying just compensation, to enter onto estates and make natural drains more burdensome by increasing the natural flow of the water." In order for a Drainage District to enter onto private property it must "either compensate defendant for damage sustained due to the burden imposed on the defendant's property or have acquired the right to enter onto the defendant's property by some other means." *Id.* at 478.

Not only should Mr. Broussard not be cast with expert witness fees and all costs in this case, he has a claim for full compensation and attorney's fees under La.R.S. 13:5111 and the payment of all costs in connection with asserting his rights in this case. Therefore, I would reverse the declaratory judgment in favor of the Drainage District and remand this matter to the district court for a determination of the amount of compensation which should be paid to Mr. Broussard for the right of

6

way the Drainage District is seeking and payment of attorney's fees and all costs to

Mr. Broussard, including the costs for this present appeal